## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

In re:

NEELKANTH HOTELS, LLC,

          Debtor.

_____/

Case No. 20-69501-jwc

Chapter 11

## MIDLAND LOAN SERVICES' MOTION
## TO PROHIBIT USE OF CASH COLLATERAL

U.S. BANK NATIONAL ASSOCIATION, as Trustee for the registered holders of COMM

2012-CCRE3 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, acting by and

through MIDLAND LOAN SERVICES, solely in its capacity as Special Servicer ("Movant"), a

secured party and party in interest, moves, pursuant to 11 U.S.C. § 363, to prohibit the use of

Movant's cash collateral ("Cash Collateral") by Neelkanth Hotels, LLC (the "Debtor"), and states

as follows:

### Background

1.      Debtor commenced this Chapter 11 case on August 31, 2020 (the "Petition Date").

2.      The Debtor's Petition was not accompanied by any schedules and none have since

been filed.  However, the case is a single asset real estate case and thus, the sole asset at issue in

the case is real property located at property located at 1302 Green Street Conyers, Georgia (the

"Real Property"), which is subject to a Deed to Secure Debt and an Assignment of Rents.

123505075.1

3.      Movant is the successor by assignment to Cantor Commercial Real Estate Lending, L.P. ("Cantor"), the original lender on a loan made to Debtor pursuant to a Promissory Note dated August 30, 2012, from Debtor to Cantor in the original principal amount of $6,000,000.00 (the "Note").

4.      The Loan is further evidenced by a Loan Agreement dated August 30, 2012 between Debtor and Cantor (the "Loan Agreement").

5.      Debtor's obligations under the Note and Loan Agreement are secured by a Deed to Secure Debt, Security Agreement, Assignment of Leases and Fixture Filing with respect to the Real Property dated August 30, 2012 (the "Security Deed") and an Assignment of Leases and Rents, dated August 30, 2012 (the "Rent Assignment").  Copies of the Security Deed and the Rent Assignment are attached hereto as **Exhibits A and B**.

6.      The Security Deed was recorded on September 10, 2012, at Deed Book 5224, page 110 of the Public Records of Rockdale County, Georgia.

7.      The Rent Assignment was recorded on September 10, 2012, at Deed Book 5224 at page 134 of the Public Records of Rockdale County, Georgia.

8.      Among other things, the Security Deed and  the Assignment of Rents provide Movant a security interest with respect to Debtor's accounts and accounts receivable and an assignment of rents, and all other proceeds from the Real Property and its operations (collectively, the "Property").

9.      The Note, Security Deed, Loan Agreement, and Rent Assignment (the "Loan Documents") were assigned to Movant on or about October 18, 2012, pursuant to an Assignment

123505075.1

of Deed to Secure Debt, Security Deed, Assignment of Leases and Fixture Filing and Assignment of Assignment of Leases and Rents ("Assignment"), a copy of which is attached as **Exhibit C**.

10.     Debtor went into default under the Loan Documents in late 2019, including failing to pay monthly installment payments of principal, interest, and escrows/reserves on the Loan.

11.     Movant sought and obtained the appointment of a receiver regarding the Property and the parties subsequently executed a Reinstatement and Modification Agreement, a copy of which is attached as **Exhibit D**.

12.     Since April 2020, Debtor has failed or refused to pay to Movant the monthly installments of principal and interest, as well as tax and insurance impounds and other monthly reserve payments due under the Loan and the loan was accelerated.

13.     On or about July 28, 2020, Movant began proceedings to affect the foreclosure sale of the property (the "Foreclosure Proceedings").

14.     Pursuant to the Foreclosure Proceedings, a foreclosure sale regarding the Property was scheduled for September 1, 2020.

15.     As of the Petition Date, and pursuant to the Judgment, the Debtor owed Movant $6,100,762.04.

<u>**Relief Requested**</u>

Movant requests that this Court enter an Order prohibiting the Debtor's use of Movant's Cash Collateral.  Pursuant to Bankruptcy Code Section 363(c)(2), the Debtor cannot use Movant's Cash Collateral without its consent, or this Court's authorization to use of such Cash Collateral, after notice and a hearing:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Debtor has not requested Movant's consent to use the Cash Collateral and no agreement has been reached regarding cash collateral and/or adequate protection issues since the commencement of this case.

Debtor has not yet filed any motion seeking this Court's authority to use Movant's Cash Collateral and the Court has not entered any order permitting Debtor to use Movant's Cash Collateral. In the absence of Movant's consent or an order of this Court, after notice and a hearing, the Debtor is not permitted to use Cash Collateral. It is Debtor's obligation, absent and until Movant's consent or this Court's authorization to use the Cash Collateral, to segregate any Cash Collateral received. 11 U.S.C. § 363(c)(4); *In re Four Seasons Marine & Cycle, Inc.*, 263 B.R. 764, 768-69 (E.D. Tex. 2001).

If a secured creditor objects to the debtor's proposed use of cash collateral, the court must ensure that the creditor's interests are adequately protected:

> [O]n request of an entity that has an interest in property used. . . the court, with or without a hearing, shall prohibit or condition such use. . . as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

WHEREFORE, Movant, respectfully requests that this Court enter an order prohibiting the Debtor's use of Movant's Cash Collateral and granting such further relief as may be just and proper.

3

123505075.1

Dated:  September 15, 2020

Respectfully submitted,

**CARLTON FIELDS, P.A.**


*/s/ Justan C. Bounds*
Justan C. Bounds
Georgia Bar No. 339789
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia  30309
(404) 815-3400
(404) 815-3415 (fax)
Email: jbounds@carltonfields.com

*Attorneys for Movant*

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 15, 2020, a true and correct copy of Midland Loan Services' Motion To Prohibit Use Of Cash Collateral was served via electronic means as listed on the Court's ECF noticing system or by regular first class mail to the parties listed on the attached list.

Respectfully submitted,

**CARLTON FIELDS, P.A.**

*/s/ Justan C. Bounds*
Justan C. Bounds
Georgia Bar No. 339789
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia  30309
(404) 815-3400
(404) 815-3415 (fax)
Email: jbounds@carltonfields.com

*Attorneys for Movant*

5

123505075.1

**DISTRIBUTION LIST:**

John A. Christy
Schreeder, Wheeler & Fling, LLP
1100 Peachtree Street
Suite 800
Atlanta, GA 30309-4516

Thomas Wayne Dworschak
Office of the U.S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303

Sean A. Gordon
Austin Alexander
Thompson Hine LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326

Neelkanth Hotels, LLC
5400 Laurel Springs Parkway
Suite 202
Suwanee, GA 30024

Neelkanth Hotels, LLC
1302 SE Green Street
Conyers, GA 30012

6

# Exhibit A

3 8
DB12C3
9 L

```
Doc ID:   008726810024 Type: SD
Recorded: 09/10/2012 at 03:46:06 PM
Fee Amt: $18,056.00 Page 1 of 24
Intangible Tax: $18,000.00
Rockdale County Superior Court
Ruth A. Wilson Clerk
BK 5224 PG 110-133
```

THIS INSTRUMENT PREPARED BY

Return to: David Holcomb
900 Old Roswell Lakes Pkwy
Suite 310
Roswell, GA 30076

---

*(SPACE ABOVE THIS LINE FOR RECORDER'S USE)*

NEELKANTH HOTELS LLC, as grantor
(Borrower)

TO

CANTOR COMMERCIAL REAL ESTATE LENDING, L.P., as grantee
(Lender)

---

**DEED TO SECURE DEBT, SECURITY AGREEMENT,
ASSIGNMENT OF LEASES AND FIXTURE FILING**

---

Dated:    As of August 3o, 2012

Location:    1302 Green Street
Conyers, Georgia

County:    Rockdale

~#4830-7853-5952

2

## DEED TO SECURE DEBT, SECURITY AGREEMENT,
## ASSIGNMENT OF LEASES AND FIXTURE FILING

This DEED TO SECURE DEBT, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND FIXTURE FILING (as the same may be amended, restated, replaced, supplemented or otherwise modified, being hereinafter referred to as this "*Security Instrument*"), is made as of August 3̱0̱, 2012, by NEELKANTH HOTELS LLC, a Georgia limited liability company, having its principal place of business at 1540 Hwy 138 SE, Suite 4G, Conyers, Georgia 30013, as grantor ("*Borrower*"), for the benefit of CANTOR COMMERCIAL REAL ESTATE LENDING, L.P., a Delaware limited partnership having an address at 110 East 59th Street, 6th Floor, New York, New York 10022, as grantee (together with its successors and assigns, collectively, "*Lender*").

### RECITALS:

A.     This Security Instrument is given to secure a loan (the "*Loan*") in the principal sum of Six Million and No/100 Dollars ($6,000,000.00) advanced pursuant to that certain Loan Agreement, dated as of the date hereof, between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Loan Agreement*") and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower in favor of Lender (as the same may be amended, restated, replaced, supplemented, extended or otherwise modified from time to time, the "*Note*") on September 6, 2022 (the "*Maturity Date*"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

B.     Borrower desires to secure the payment of the Debt (as defined in the Loan Agreement) and the performance of the Other Obligations (hereinafter defined).

C.     This Security Instrument is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement, the Note, and that certain Assignment of Leases and Rents of even date herewith made by Borrower in favor of Lender delivered in connection with this Security Instrument (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Assignment of Leases*"), including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Instrument (the Loan Agreement, the Note, this Security Instrument, the Assignment of Leases and all other documents evidencing or securing or otherwise setting out conditions, covenants, representations and/or remedies in favor of the Lender in connection with the funding of the Debt (including all additional mortgages, deeds of trust, deeds to secure debt and assignments of leases and rents) or executed or delivered in connection therewith, are hereinafter referred to collectively as the "*Loan Documents*").

NOW THEREFORE, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Security Instrument:

## ARTICLE 1

### GRANTS OF SECURITY

Section 1.1     **Property Conveyed**.  Borrower does hereby irrevocably grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender, with power of sale AND RIGHT OF ENTRY AND POSSESSION for the benefit and security of Lender, all of the real, personal, tangible and

intangible property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "***Property***") including, without limitation, the following:

(a)     Land. The real property, and/or leasehold interest in the real property situated in Rockdale County, Georgia and described in **Exhibit "A"** attached hereto and made a part hereof (the "***Land***");

(b)     Additional Land. All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental deed to secure debt or otherwise, be expressly made subject to the lien of this Security Instrument;

(c)     Improvements. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "***Improvements***");

(d)     Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, permits, licenses, rights of way and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)     Equipment. All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, heating, ventilation or air conditioning equipment, garbage equipment and apparatus, incinerators, boilers, furnaces, motors, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "***Equipment***"). Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under leases except to the extent that Borrower shall have any right or interest therein;

(f)     Fixtures. All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned

2

individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "*Fixtures*"). Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to leases, except to the extent that Borrower shall have any right or interest therein;

(g)    Personal Property. All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "*Personal Property*"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the "*Uniform Commercial Code*"), superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(h)    Leases and Rents. All leases (including, without limitation, ground leases, subleases or subsubleases), lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "*Leases*"), whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 *et seq.*, as the same may be amended from time to time (the "*Bankruptcy Code*") and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, deposits (including, without limitation, security, utility and other deposits) accounts and receipts from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "*Rents*") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt and the performance of the Other Obligations;

(i)    Condemnation Awards. All Awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to all or any portion of the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Property including, without limitation, any award or awards, or settlements or payments, hereafter made resulting from (i) condemnation proceedings or the taking of all or any portion of the Improvements, the Equipment, the Fixtures, the Leases or the Personal Property, or any part thereof, under the power of eminent domain; or (ii) the alteration of grade or the location or the discontinuance of any street adjoining the Property or any portion thereof; and Borrower hereby agrees to execute and deliver from time to time such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award, damage, payment or other compensation;

3

(j)      Insurance Proceeds.  All Insurance Proceeds in respect of the Property under any Policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any Policies, judgments, or settlements made in lieu thereof, in connection with a Casualty to the Property;

(k)      Tax Certiorari.  All refunds, rebates or credits in connection with any reduction in Taxes or Other Charges charged against the Property;

(l)      Conversion.  All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, Insurance Proceeds and Awards, into cash or liquidation claims;

(m)      Rights.  The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(n)      Agreements.  All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(o)      Trademarks.  All trade names, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(p)      Accounts.  All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including, without limitation, all accounts established or maintained pursuant to the Loan Agreement, the Clearing Account Agreement or the Deposit Account Agreement; together with all deposits or wire transfers made to such accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof; and

(q)      Other Rights.  Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (p) above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "*Real Property*") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and conveyed hereby.

Section 1.2      **Assignment of Rents**.  Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Assignment of Leases,

the Loan Agreement, the Clearing Account Agreement, the Deposit Account Agreement and <u>Section 7.1(h)</u> of this Security Instrument, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3    <u>**Security Agreement**</u>.  This Security Instrument is both a real property deed to secure debt and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property including all accounts established by Lender pursuant to the Loan Agreement, Clearing Account Agreement or Deposit Account Agreement.  By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment, the Personal Property and the other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "***Collateral***").  If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender.  Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees and costs actually incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default.  Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower.  The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.  Borrower's (debtor's) principal place of business is as set forth on the first page hereof and the address of Lender (secured party) is as set forth on the first page hereof.

Section 1.4    <u>**Fixture Filing**</u>.  Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement (naming Borrower as the Debtor and Lender as the Secured Party) filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

Section 1.5    <u>**Pledges of Monies Held**</u>.  Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender in connection with the Loan, including, without limitation, any sums deposited in the Deposit Account, the Clearing Account, the Reserve Funds and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Security Instrument.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property, WITH POWER OF SALE, unto and to the use and benefit of Lender and its successors and assigns, forever in fee simple;

WITH POWER OF SALE, to secure Borrower's payment to Lender of the Debt and performance of the Other Obligations at the time and in the manner provided in the Note, the Loan Agreement and this Security Instrument. This Security Instrument is a deed passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt and is not a mortgage;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly (a) pay to Lender the Debt at the time and in the manner provided in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, (b) perform the Other Obligations as set forth in the Loan Agreement, this Security Instrument and the other Loan Documents, and (c) abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, Lender shall cancel, terminate and surrender this Security Instrument; provided, however, that Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release.

## ARTICLE 2

### DEBT AND OBLIGATIONS SECURED

Section 2.1     **Debt**.  This Security Instrument and the grants, assignments and transfers made in Article 1 hereof are given for the purpose of securing the Debt.

Section 2.2     **Other Obligations**.  This Security Instrument and the grants, assignments and transfers made in Article 1 hereof are also given for the purpose of securing the following (the "**Other Obligations**"):

      (a)     the performance of all other obligations of Borrower contained herein;

      (b)     the performance of each obligation of Borrower contained in the Note, the Loan Agreement and any other Loan Document; and

      (c)     the performance of each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

Section 2.3     **Debt and Other Obligations**.  Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations**."

## ARTICLE 3

### BORROWER COVENANTS

Borrower covenants and agrees that:

Section 3.1     **Payment of Debt**.  Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument.

~#4830-7853-5952

6

Section 3.2    **Incorporation by Reference**.  All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

Section 3.3    **Insurance**.  Borrower shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

Section 3.4    **Maintenance of Property**.  Borrower shall cause the Property to be maintained in a good and safe condition and repair.  The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Lender or as otherwise permitted pursuant to the Loan Agreement.  Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

Section 3.5    **Waste**.  Borrower shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Security Instrument.  Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

Section 3.6    **Payment for Labor and Materials**.

(a)    Subject to Section 3.6(b) hereof, Borrower (i) will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials ("*Labor and Material Costs*") incurred in connection with the Property, (ii) never permit to exist beyond the due date thereof in respect of the Property, or any part thereof, any Lien or security interest, even though inferior to the Liens and security interests created hereby and by the other Loan Documents, and (iii) never permit to be created or exist in respect of the Property or any part thereof any other or additional Lien or security interest other than the Liens or security interests created hereby and by the other Loan Documents except for the Permitted Encumbrances.

(b)    After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Security Instrument or any of the other Loan Documents, (ii) Borrower is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Property or Borrower shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Borrower shall have furnished the security as may be required in the proceeding,

~#4830-7853-5952

or as may be reasonably requested by Lender, to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

Section 3.7    **Performance of Other Agreements**.  Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

Section 3.8    **Change of Name, Identity or Structure**.  Borrower shall not change Borrower's name, identity (including its trade name or names) or, if not an individual, Borrower's corporate, partnership or other structure without notifying Lender of such change in writing at least thirty (30) days prior to the effective date of such change and, in the case of a change in Borrower's structure, without first obtaining the prior written consent of Lender.  Borrower shall execute and deliver to Lender, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Lender to establish or maintain the validity, perfection and priority of the security interests granted herein.  At the request of Lender from time to time, Borrower shall execute a certificate in form satisfactory to Lender listing the trade names under which Borrower is operating or intends to operate the Property, and representing and warranting that Borrower does business under no other trade name with respect to the Property.

# ARTICLE 4

## OBLIGATIONS AND RELIANCES

Section 4.1    **Relationship of Borrower and Lender**.  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of the Loan Agreement, the Note, this Security Instrument or any other Loan Document shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

Section 4.2    **No Reliance on Lender**.  The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property.  Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

Section 4.3    **No Lender Obligations**.

(a)    Notwithstanding the provisions of Subsections 1.1(h) and (n) or Section 1.2 hereof, Lender is not undertaking the performance of (i) any obligations under the Leases, or (ii) any obligations with respect to any other agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses or other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any Officer's Certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or Policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

8

Section 4.4   **Reliance**.  Borrower recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 4.1 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof, that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth in Section 4.1 of the Loan Agreement.

## ARTICLE 5

### FURTHER ASSURANCES

Section 5.1   **Recording of Security Instrument, etc**.  Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other Loan Documents creating a Lien or security interest or evidencing the Lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and to fully protect and perfect the Lien or security interest hereof upon, and the interest of Lender in, the Property.  Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any other security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any other security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

Section 5.2   **Further Acts, etc**.  Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, deeds to secure debt, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Legal Requirements. Borrower, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Property.  Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including, without limitation, such rights and remedies available to Lender pursuant to this Section 5.2.

Section 5.3   **Changes in Tax, Debt, Credit and Documentary Stamp Laws**.

(a)   If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will

9

pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender, unenforceable or provide the basis for a defense of usury, then Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(b)     Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt. If such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(c)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents, or shall impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

Section 5.4     **Severing of Security Instrument**. This Security Instrument and the Note may, at any time until the same shall be fully paid and satisfied, at the sole election of Lender, be severed into two or more notes and two or more security instruments in such denominations as Lender shall determine in its sole discretion, each of which shall cover all or a portion of the Property to be more particularly described therein. To that end, Borrower, upon written request of Lender, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then owner of the Property, to Lender and/or its designee or designees, substitute notes and security instruments in such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing terms, provisions and clauses similar to those contained herein and in the Note, and such other documents and instruments as may be required by Lender.

Section 5.5     **Replacement Documents**. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or a replacement of such other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

# ARTICLE 6

## DUE ON SALE/TRANSFER

Section 6.1     **Lender Reliance**. Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for the repayment of the Debt and the performance of the Other Obligations. Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations, Lender can recover the Debt by a sale of the Property.

Section 6.2     **No Sale/Transfer**. Neither Borrower nor any Restricted Party shall Transfer the Property or any part thereof or any interest therein, or permit or suffer the Property or any part thereof or

~#4830-7853-5952

any interest therein to be Transferred, other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE 7

### RIGHTS AND REMEDIES UPON DEFAULT

Section 7.1      **Remedies**.  Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, to the fullest extent permitted by law, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(a)      declare the entire unpaid Debt to be immediately due and payable;

(b)      institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property, or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c)      with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing Lien and security interest of this Security Instrument for the balance of the Debt and the Other Obligations not then due, unimpaired and without loss of priority;

(d)      sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law; and, without limiting the foregoing:

(i)      in connection with any sale or sales hereunder, Lender shall be entitled to elect to treat any of the Property which consists of (x) a right in action, or (y) property that can be severed from the Real Property covered hereby, or (z) any improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property.  Where the Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

(ii)      Lender shall be entitled to elect to proceed against any or all of the Real Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Lender so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Lender;

(iii)    should Lender elect to sell any portion of the Property which is Real Property or which is Personal Property, Equipment or Fixtures that the Lender has elected under applicable law to sell together with Real Property in accordance with the laws governing a sale of the Real Property, Lender shall give such notice of the occurrence of an Event of Default, if any, and its election to sell such Property as may then be required by law. Thereafter, upon the giving of such notice of sale and the expiration of any required time period as may then be required by law, subject to the terms hereof and of the other Loan Documents, and without the necessity of any demand on Borrower or Lender at the time and place specified in the notice of sale, shall sell such Real Property or part thereof at public auction to the highest bidder for cash in lawful money of the United States. Lender may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale; and

(iv)    if the Property consists of several lots, parcels or items of property, Lender shall, subject to applicable law, (A) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (B) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender designates. Any Person, including Borrower or Lender, may purchase at any sale hereunder. Should Lender desire that more than one sale or other disposition of the Property be conducted, Lender shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may designate, and no such sale shall terminate or otherwise affect the lien of this Security Instrument on any part of the Property not sold until all the Obligations have been satisfied in full. In the event Lender elects to dispose of the Property through more than one sale, except as otherwise provided by applicable law, Borrower agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein such sale may be made;

(e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, in the Loan Agreement or in the other Loan Documents;

(f)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, with such notice as may be expressly required under applicable law, but without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof;

(h)    the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys, and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise, and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat, (ii) complete any construction on the Property in such manner and form as Lender deems advisable, (iii) make alterations, additions, renewals, replacements and improvements to or on the Property, (iv) exercise all rights and

12

powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof, (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower, (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise, and (vii) apply the receipts from the Property to the payment of the Debt and the performance of the Other Obligations, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees and costs) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, Insurance Premiums and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)     exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and/or the Personal Property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and/or the Personal Property; and (ii) request Borrower at its expense to assemble the Fixtures, the Equipment and/or the Personal Property and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment and/or the Personal Property sent to Borrower in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)     apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document to the payment of the following items in any order in its sole discretion:

(i)     Taxes and Other Charges;

(ii)     Insurance Premiums;

(iii)     Interest on the unpaid principal balance of the Note;

(iv)     Amortization of the unpaid principal balance of the Note; and/or

(v)     All other sums payable pursuant to the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, including, without limitation, the Yield Maintenance Fee, if applicable, and advances made by Lender pursuant to the terms of this Security Instrument;

(k)     pursue such other remedies as Lender may have under applicable law; or

(l)     apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its sole and absolute discretion.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Instrument shall continue as a Lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

13

Section 7.2    **Application of Proceeds**.  The purchase money, proceeds and avails of any disposition of the Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

Section 7.3    **Right to Cure Defaults**.  Upon the occurrence and during the continuance of any Default or Event of Default, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any Other Obligations hereunder, make any payment or do any act required of Borrower hereunder or in the other Loan Documents with respect to any Other Obligations which payment or action on the part of Lender shall be in such manner and to such extent as Lender may deem necessary to protect the security hereof.  Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or to collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and expenses actually incurred), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand.  All such costs and expenses incurred by Lender in remedying any Default or Event of Default or in appearing in, defending, or bringing any such action or proceeding, as hereinabove provided, shall bear interest at the Default Rate, for the period beginning on the first day after notice from Lender that such cost or expense was incurred and continuing until the date of payment to Lender.  All such costs and expenses incurred by Lender, together with interest thereon calculated at the Default Rate, shall be deemed to constitute a portion of the Debt and to be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 7.4    **Actions and Proceedings**.  Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its sole and absolute discretion, decides should be brought to protect its interest in the Property.

Section 7.5    **Recovery of Sums Required To Be Paid**.  Lender shall have the right, from time to time, to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for any Default or Event of Default by Borrower existing at the time such earlier action was commenced.

Section 7.6    **Examination of Books and Records**.  At reasonable times and upon reasonable prior notice (which may be given verbally), Lender, its agents, accountants and attorneys shall have the right to examine the records, books and management and other papers of Borrower which reflect upon its financial condition, at the Property or at any office regularly maintained by Borrower where the books and records are located.  Lender and its agents shall have the right to make copies and extracts from the foregoing records and other papers.  In addition, at reasonable times and upon reasonable notice (which may be given verbally), Lender, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Borrower pertaining to the income, expenses and operation of the Property during reasonable business hours at any office of Borrower where the books and records are located.  This Section 7.6 shall apply throughout the term of the Note and without regard to whether an Event of Default has occurred or is continuing.

Section 7.7    **Other Rights, etc**.

(a)    The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument.  Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of

Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Obligations or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(b)    It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for any decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)    Lender may resort for the payment of the Debt and the performance of the Other Obligations to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce the Other Obligations or any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

Section 7.8    **Right to Release Any Portion of the Property**. Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the Lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the Debt shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and Lender may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a Lien and security interest in the remaining portion of the Property.

Section 7.9    **Violation of Laws**. If the Property is not in full compliance with any Legal Requirement, Lender may impose additional requirements upon Borrower in connection herewith including, without limitation, monetary reserves or financial equivalents.

Section 7.10    **Recourse and Choice of Remedies**. Notwithstanding any other provision of this Security Instrument or the Loan Agreement, including, without limitation, Section 3.1 of the Loan Agreement, Lender and other Indemnified Parties are entitled to enforce the obligations of Borrower and any guarantor or indemnitor with respect to the Loan contained in Section 8.1 herein without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure, exercise of a power of sale or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Lender commences a foreclosure action against the Property or exercises its power of sale pursuant to this Security Instrument, Lender is entitled to pursue a deficiency judgment with respect to such obligations against Borrower and any guarantor or indemnitor with respect to the Loan. The provisions of Section 8.1 hereof are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Security Instrument or the other Loan Documents, and Borrower and any guarantor or indemnitor with respect to the Loan are fully and personally liable for the obligations set forth in said Section 8.1 hereof. The liability of Borrower and any guarantor or indemnitor with respect to the Loan pursuant to Section 8.1 hereof is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Lender from foreclosing

15

or exercising its power of sale pursuant to this Security Instrument or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Borrower pursuant to <u>Section 8.1</u> hereof whether or not an action is brought against any other Person and whether or not any other Person is joined in the action or actions. In addition, Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in <u>Article 7</u> or <u>Article 8</u> herein.

Section 7.11 **Right of Entry**. Upon reasonable notice to Borrower (which may be given verbally), Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.

Section 7.12 **Lender Not Obligated; Cumulative Rights**. Nothing in this instrument shall be construed as obligating Lender to take any action or incur any liability with respect to the Property, and all options given to Lender are for its benefit and shall and may be exercised in such order and in such combination as Lender in its sole discretion may from time to time decide. Each remedy is distinct and cumulative to all other rights and remedies under this Instrument and the Loan Documents or afforded by law or equity, and may be exercised concurrently, independently or successively, in any order whatsoever.

## ARTICLE 8

### MORTGAGE TAX INDEMNIFICATION

Section 8.1 **Mortgage and/or Intangible Tax**. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon, incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.

## ARTICLE 9

### WAIVERS

Section 9.1 **Waiver of Counterclaim**. To the extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

Section 9.2 **Marshalling and Other Matters**. To the extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, to the extent permitted by applicable law, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument AND NOTICE OF INTENTION TO MATURE OR DECLARE DUE THE WHOLE OF THE DEBT on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument.

~#4830-7853-5952

Section 9.3     **Waiver of Notice**. To the extent permitted by applicable law, Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Security Instrument or the other Loan Documents specifically and expressly provide for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

Section 9.4     **Waiver of Statute of Limitations**. To the extent permitted by applicable law, Borrower hereby expressly waives and releases its right to plead any statute of limitations as a defense to payment of the Debt or performance of the Other Obligations.

Section 9.5     **Waiver of Jury Trial**. BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST UNDER APPLICABLE LAWS WITH REGARD TO THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.   THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.   LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

# ARTICLE 10

## EXCULPATION

The provisions of <u>Section 3.1</u> of the Loan Agreement are hereby incorporated by reference into this Security Instrument to the same extent and with the same force as if fully set forth herein.

# ARTICLE 11

## NOTICES

All notices or other written communications hereunder shall be delivered in accordance with <u>Section 10.6</u> of the Loan Agreement.

# ARTICLE 12

## APPLICABLE LAW

Section 12.1     **Governing Law; Jurisdiction; Service of Process**. This Security Instrument will be governed and construed in accordance with the laws of the State in which the Property is located (without regard to conflict of law provisions thereof). All provisions of the Loan Agreement incorporated herein by reference shall be governed by, and construed in accordance with, the laws of the State in which the Property is located.

Section 12.2     **Provisions Subject to Applicable Law**. All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they

~#4830-7853-5952

will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

## ARTICLE 13

### DEFINITIONS

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in the singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms and the singular form of nouns and pronouns shall include the plural and vice versa.

## ARTICLE 14

### MISCELLANEOUS PROVISIONS

Section 14.1    **No Oral Change**.  This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 14.2    **Successors and Assigns**.  This Security Instrument shall be binding upon and shall inure to the benefit of Borrower and Lender and their respective successors and permitted assigns, as set forth in the Loan Agreement.  Lender shall have the right to assign or transfer its rights under this Security Instrument in connection with any assignment of the Loan and the Loan Documents.  Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Security Instrument.  Borrower shall not have the right to assign or transfer its rights or obligations under this Security Instrument without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment without such consent shall be null and void.

Section 14.3    **Inapplicable Provisions**.  If any term, covenant or condition of the Loan Agreement, the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Security Instrument shall be construed without such provision.

Section 14.4    **Headings, etc**.  The headings and captions of the various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

18

Section 14.5    **Subrogation**.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the payment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

Section 14.6    **Entire Agreement**.  The Note, the Loan Agreement, this Security Instrument and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Security Instrument and the other Loan Documents.

Section 14.7    **Limitation on Lender's Responsibility**.    No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.  Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

Section 14.8    **Principles of Construction**.  In the event of any inconsistencies between the terms and conditions of this Security Instrument and the terms and conditions of the Loan Agreement, the terms and conditions of the Loan Agreement shall control and be binding.

Section 14.9    **Severability**.  In case any one or more of the provisions of this Security Instrument, the Note, the Assignment of Leases, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof.  Each of the provisions of every such agreement, document or instrument shall be enforceable by Lender to the fullest extent now or hereafter permitted by law.

Section 14.10    **No Partnership or Joint Venture**.  No provision of this Security Instrument or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Borrower and Lender, it being intended that the only relationship created by this Security Instrument, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

Section 14.11    **No Merger.**  So long as the Obligations owed to Lender secured hereby remain unpaid and undischarged and unless Lender otherwise consents in writing, the fee, leasehold, subleasehold and sub-subleasehold estates in and to the Property will not merge but will always remain separate and distinct, notwithstanding the union of such estates (without implying Borrower's consent to such union) either in Borrower, Lender, any tenant or any third party by purchase or otherwise, in the

19

event this Security Instrument is originally placed on a leasehold estate and Borrower later obtains fee title to the Property, such fee title will be subject and subordinate to this Security Instrument.

## ARTICLE 15

### STATE-SPECIFIC PROVISIONS

Section 15.1    **Principles of Construction**.  In the event of any inconsistencies between the terms and conditions of this Article 16 and the terms and conditions of this Security Instrument, the terms and conditions of this Article 16 shall control and be binding.

Section 15.2    **Certain Matters Relating to Property Located in the State of Georgia**.  With respect to the Property which is located in the State of Georgia, notwithstanding anything contained herein to the contrary:

(a)    THIS SECURITY INSTRUMENT is made in compliance with the provisions of Section 44-14-60, *et seq*. of the Official Code of Georgia Annotated, as amended, for the purpose of securing an indebtedness or guaranty of Borrower to Lender together with interest thereon from maturity as prescribed in the Note, any additional advances made by Lender to protect the Property or to pay taxes or other assessments, and also for the purpose of securing such other and further indebtedness as may now be, or from time to time hereafter shall become owing to Lender by Borrower which indebtedness shall include reasonable attorneys' fees actually incurred and in any and all renewals thereof and in any other note evidencing any indebtedness secured hereby, and also any contingent indebtedness owing to Lender by Borrower as surety, guarantor or endorser, it being the purpose and intention of this conveyance that in the event, in addition to the indebtedness above specifically described, Borrower may now be otherwise indebted or may from time to time hereafter become otherwise indebted to Lender through overdrafts or other loans from Lender or contingently as surety, guarantor or endorser, then any and all such indebtedness shall be secured by this conveyance, as well as the specific debt first above described.

(b)    This instrument covers goods which are or are to be fixtures related to the real estate described herein and should be indexed in the index of financing statements and in the real property records.

(c)    Borrower authorizes and empowers Lender to take possession of the Property, or any part thereof, and collect rents and revenues and Borrower hereby grants to Lender, the following irrevocable power of attorney:  To sell all or any part of the Property at auction, at the usual place for conducting sales at the Courthouse in the County where the Property or any part thereof lies, in said State, to the highest bidder for cash, after advertising the time, terms and place of such sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper published in the County where the Property or any part thereof lies, or in the paper in which the Sheriff's advertisements for such County are published, all other notice being hereby waived by Borrower; and Lender (or any person on behalf of Lender) may bid and purchase at such sale and thereupon execute and deliver to the purchaser or purchasers at such sale a sufficient conveyance of the Property in fee simple, which conveyance shall divest Borrower of all right, title, interest, equity and equity of redemption that Borrower may have in the Property and to vest the same in the purchaser or purchasers at such sale and, which conveyance may contain recitals as to the happenings of the default upon which the execution of the power of sale herein granted depends, and Borrower hereby constitutes and appoints Lender the agent and attorney-in-fact of Borrower to make such recitals, and hereby covenants and agrees that the recitals so made by Lender shall be binding and conclusive upon Borrower, and Lender shall collect the proceeds of such sale, and after reserving therefrom the entire amount of principal and interest due, together with the amount of taxes, assessments and premiums of insurance or other payments theretofore paid by

20

Lender, together with all costs and expenses of sale including, without limitation, reasonable attorneys' fees, shall pay any overage to Borrower as provided by law. All remedies provided in this Security Instrument are cumulative to any other right or remedy under this Security Instrument or afforded by law or equity, and may be exercised concurrently, independently or successively and any costs, expenses or monetary rights (including rights of Lender to reasonable attorneys' fees) associated with the exercise of such remedy or remedies shall be secured by this Security Instrument in addition to all other obligations herein provided for. The power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise and are granted as cumulative to the remedies for collection of the indebtedness secured hereby as provided by law. In the event of any sale under power by Lender, Borrower shall be deemed a tenant holding over and shall promptly deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to applicable laws.

Section 15.3    **Waiver of Notice for Immediate Writ of Possession**.    Borrower hereby acknowledges that the Obligations arise out of a "commercial transaction" as that term is defined in the O.C.G.A. Sec. 44-14-260 (1) concerning foreclosure of liens on personalty, and agrees that if an Event of Default has occurred and is continuing, Lender shall have the right to an immediate writ of possession without notice of hearing, and Borrower hereby knowingly and intelligently waives any and all rights it may have to any notice and posting of a bond prior to seizure by Lender, its transferees, assigns or successors in interest of the Property or any portion thereof. The foregoing is intended by Borrower as a "waiver" as that term is defined in the O.C.G.A. Sec 44-14-260 (3) relating to foreclosure of liens on personalty.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY DELETED]

WAIVER OF BORROWER'S RIGHTS. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE UNDER THE CONSTITUTION OR THE LAWS OF THE STATE OF GEORGIA OR THE CONSTITUTION OR THE LAWS OF THE UNITED STATES OF AMERICA TO NOTICE, OTHER THAN EXPRESSLY PROVIDED FOR IN THIS SECURITY INSTRUMENT, OR TO JUDICIAL HEARING PRIOR TO THE EXERCISE OF ANY RIGHT OR REMEDY PROVIDED BY THIS SECURITY INSTRUMENT TO THE LENDER AND BORROWER WAIVES BORROWER'S RIGHTS, IF ANY, TO SET ASIDE OR INVALIDATE ANY SALE DULY CONSUMMATED IN ACCORDANCE WITH THE PROVISIONS OF THIS SECURITY INSTRUMENT ON THE GROUND (IF SUCH BE THE CASE) THAT THE SALE WAS CONSUMMATED WITHOUT A PRIOR JUDICIAL HEARING. ALL WAIVERS BY BORROWER IN THIS PARAGRAPH HAVE BEEN MADE VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY, AFTER BORROWER HAS BEEN FIRST APPRISED OF BORROWER'S POSSIBLE ALTERNATIVE RIGHTS BY BORROWER'S ATTORNEY.

_____ [Borrower Initials]

IN WITNESS WHEREOF, this Security Instrument has been executed under seal by Borrower as of the day and year first above written.

**BORROWER:**

NEELKANTH HOTELS LLC,                    [SEAL]
a Georgia limited liability company

By: _____
Name:    Hemant Thaker
Title:    Managing Member

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: 02/23/16

[AFFIX NOTARIAL SEAL]

*Signature Page to Deed to Secure Debt*



## EXHIBIT "A"
[LEGAL DESCRIPTION]

ALL that tract or parcel of land lying and being in Land Lot 299 of the 16th District of Rockdale County, City of Conyers, Georgia, and being more particularly described as follows:

BEGINNING at a point at the intersection of the eastern right of way of Green Street, (being a 60 foot right of way) with the extension of the centerline of Fairground Street;

THENCE southeast along said right of way of Green Street, 256.35 feet to a point and the true point of beginning.

THENCE leaving said right of way of Green Street, North 67 degrees 44 minutes 02 seconds East, a distance of 153.35 feet to a point;

THENCE North 89 degrees 55 minutes 05 seconds East, a distance of 236.88 feet to a point;

THENCE South 57 degrees 49 minutes 13 seconds East a distance of 66.20 feet to a point;

THENCE South 86 degrees 53 minutes 11 seconds East, a distance of 475.41 (Survey) 387.92 (Deed) feet to a point;

THENCE South 08 degrees 26 minutes 36 seconds West, a distance of 68.17 (Survey) 67.09 (Deed) feet to a concrete monument found;

THENCE North 86 degrees 50 minutes 09 seconds West, a distance of 539.20 feet to an iron pin found;

THENCE South 00 degrees 47 minutes 15 seconds West, a distance of 106.66 feet to an axle found;

THENCE North 87 degrees 15 minutes 22 seconds West, a distance of 306.50 feet to an axle found on the eastern right of way of Green Street;

THENCE along the eastern right of way of Green Street North 22 degrees 01 minute 49 seconds West, a distance of 142.71 feet to a point and the true point of BEGINNING.

PARCEL ID NO. C29-0-03-019A

# Exhibit B

THIS INSTRUMENT PREPARED BY

Return to: David Holcomb
900 Old Roswell Lakes Pkwy
Suite 310
Roswell, GA 30076

Doc ID:  008726820010 Type: ASGN
Recorded: 09/10/2012 at 03:46:54 PM
Fee Amt: $28.00 Page 1 of 10
Rockdale County Superior Court
Ruth A. Wilson Clerk
BK 5224 PG 134-143

---

*(SPACE ABOVE THIS LINE FOR RECORDER'S USE)*

NEELKANTH HOTELS LLC, as assignor
(Borrower)

to

CANTOR COMMERCIAL REAL ESTATE LENDING, L.P., as assignee
(Lender)

---

## ASSIGNMENT OF LEASES AND RENTS

---

| | |
|---|---|
| Dated: | As of August 2$^{o}$, 2012 |
| Location: | 1302 Green Street<br>Conyers, Georgia |
| County: | Rockdale |

-#4830-2807-3232

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF LEASES AND RENTS (as amended, restated, supplemented or otherwise modified from time to time, this "*Assignment*"), is made as of August 30, 2012, by NEELKANTH HOTELS LLC, a Georgia limited liability company, as assignor, having an address at 1540 Hwy 138 SE, Suite 4G, Conyers, Georgia 30013 (together with its permitted successors and assigns, collectively, "*Borrower*"), to CANTOR COMMERCIAL REAL ESTATE LENDING, L.P., a Delaware limited partnership, as assignee, having an address 110 East 59th Street, 6th Floor, New York, New York 10022 (together with its successors and assigns, collectively, "*Lender*").

### RECITALS:

A.      This Assignment is given in connection with a loan in the principal sum of Six Million and No/100 Dollars ($6,000,000.00) (the "*Loan*") made by Lender to Borrower pursuant to that certain Loan Agreement, dated as of the date hereof between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Loan Agreement*"), and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower to Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Note*"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

B.      The Note is secured by that certain Deed to Secure Debt, Security Agreement, Assignment of Leases and Fixture Filing, dated the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Security Instrument*") made by Borrower for the benefit of Lender.

C.      Borrower desires to further secure the payment of the Debt and the performance of all of its Other Obligations under the Note, the Security Instrument, the Loan Agreement and the other Loan Documents.

D.      This Assignment is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents is secured hereby, and each and every term and provision of the Loan Agreement, the Note and the Security Instrument, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Assignment.

NOW THEREFORE, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Assignment:

### ARTICLE 1: ASSIGNMENT

1.1      **Property Assigned**. Borrower hereby absolutely and unconditionally assigns and grants to Lender the following property, rights, interests and estates, now owned, or hereafter acquired by Borrower:

(a)      Leases. All existing and future Leases (including the right to enforce, at law, in equity or by other means, such Leases) affecting the use, enjoyment or occupancy of all or any portion of any space in that certain lot or piece of land, more particularly described in **Exhibit "A"** annexed hereto and made a part hereof, together with all or any part of the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter

~84830-2807-3232

29

located thereon (collectively, the "*Property*"), and every modification, amendment or other agreement relating to such Leases and the right title and interest of Borrower, its successors and assigns, therein and thereunder. The term "Leases" shall include all agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property or any portion thereof now or hereafter made, whether made before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "*Bankruptcy Code*") together with any extension, renewal or replacement of the same. This Assignment of other present and future leases and present and future agreements is effective without further or supplemental assignment.

(b)   Rents. All Rents, which term shall include Rents paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code.

(c)   Bankruptcy Claims. All of Borrower's claims and rights (the "*Bankruptcy Claims*") to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code.

(d)   Lease Guaranties. All of Borrower's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support (individually, a "*Lease Guaranty*", and collectively, the "*Lease Guaranties*") given by any guarantor in connection with any of the Leases or leasing commissions (individually, a "*Lease Guarantor*", and collectively, the "*Lease Guarantors*") to Borrower.

(e)   Proceeds. All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and/or the Bankruptcy Claims.

(f)   Other. All rights, powers, privileges, options and other benefits of Borrower as lessor under any of the Leases and the beneficiary under any of the Lease Guaranties, including, without limitation, the immediate and continuing right to make claims for, and to receive and collect and acknowledge receipt for, all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Borrower or any lessor is or may become entitled to do under any of the Leases or the Lease Guaranties.

(g)   Entry. The right, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents.

(h)   Power of Attorney. Borrower's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

(i)   Other Rights and Agreements. Any and all other rights of Borrower in and to the items set forth in subsections (a) through (h) above, and all amendments, modifications, replacements, renewals and substitutions thereof.

## ARTICLE 2 - TERMS OF ASSIGNMENT

2.1   **Present Assignment and License Back**. It is intended by Borrower that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1, the Loan Agreement, the Clearing Account Agreement and the Deposit Account Agreement, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and other sums due

-84830-2807-3232

2

under the Lease Guaranties, Borrower shall hold the Rents and all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Lender for use in the payment of such sums.

2.2 **Notice To Lessees**. Borrower hereby authorizes and directs the lessees named in the Leases, any other future lessees or occupants of the Property, and all Lease Guarantors to pay over to Lender, or to such other party as Lender may direct, all Rents and all sums due under any Lease Guaranties upon receipt from Lender of written notice to the effect that Lender is then the holder of this Assignment and that an Event of Default exists, and to continue doing so until otherwise notified by Lender.

2.3 **Incorporation By Reference**. All representations, warranties, covenants, conditions and agreements contained in the Loan Agreement and the other Loan Documents, as the same may be modified, renewed, substituted or extended from time to time, are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

## ARTICLE 3 - REMEDIES

3.1 **Remedies of Lender**. Upon or at any time after the occurrence of an Event of Default, the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and all sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Property. In addition, Lender may, at its option, without waiving such Event of Default, without regard to the adequacy of the security for the Obligations, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property, without liability for trespass, damages or otherwise, and exclude Borrower and its agents or servants wholly therefrom, and take possession of the Property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper, and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and all sums due under all Lease Guaranties, including, without limitation, those past due and unpaid, with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as Lender may deem proper, and may apply the Rents and sums received pursuant to any Lease Guaranties to the payment and performance of the following in such order and proportion as Lender in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Lender may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Obligations, together with all costs and reasonable attorneys' fees. In addition, upon the occurrence of an Event of Default, Lender, at its option, may (i) complete any construction on the Property in such manner and form as Lender deems advisable, (ii) exercise all rights and powers of Borrower, including, without limitation, the right to negotiate, execute, cancel, enforce or modify any Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Property and all sums due under any Lease Guaranties, (iii) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in the possession of Borrower or its Affiliates, or (iv) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise.

3.2     **Other Remedies**. Nothing contained in this Assignment, and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder, shall be deemed to be a waiver by Lender of its rights and remedies under the Loan Agreement, the Note, the Security Instrument or the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Obligations and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by Lender hereunder. Borrower hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the Obligations of Borrower under this Assignment, the Loan Agreement, the Note, the Security Instrument or the other Loan Documents or otherwise with respect to the Loan in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Loan Agreement, the Note, the Security Instrument or any of the other Loan Documents (*provided, however,* that the foregoing shall not be deemed a waiver of (a) Borrower's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, or (b) Borrower's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

3.3     **Other Security**. Lender may (i) take or release other security for the payment of the Debt and performance of the Other Obligations (including, without limitation, the payment of the Debt, (ii) release any party primarily or secondarily liable therefor, and (iii) apply any other security held by it to the payment of the Debt and performance of the Other Obligations without prejudice to any of its rights under this Assignment.

3.4     **Non-Waiver**. The exercise by Lender of the option granted it in <u>Section 3.1</u> of this Agreement and the collection of the Rents and sums due under the Lease Guaranties and the application thereof as herein provided, shall not be considered a waiver of any Default or Event of Default by Borrower under the Note, the Loan Agreement, the Security Instrument, the Leases, this Assignment or the other Loan Documents. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Borrower or any other party to take any action to enforce any of the provisions hereof or of the Loan Agreement, the Note or the other Loan Documents, (b) the release, regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Loan Agreement, the Note, the Security Instrument or the other Loan Documents. Lender may resort for the payment of the Debt and performance of the Other Obligations to any other security held by Lender in such order and manner as Lender, in its sole discretion, may elect. Lender may take any action to recover the Obligations, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment. The rights of Lender under this Assignment shall be separate, distinct and cumulative, and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

3.5     **Bankruptcy**. (a) Upon or at any time after the occurrence of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

4

(b)     If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject such Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten (10) day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code, and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease.  If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after Lender's notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

## ARTICLE 4 - NO LIABILITY, FURTHER ASSURANCES

4.1     No Liability of Lender.  This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender.  Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default, unless such loss is caused by the willful misconduct or bad faith of Lender.  Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment and Borrower shall, and hereby agrees to, indemnify Indemnified Parties for, and to hold Indemnified Parties harmless from (a) any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Assignment, and (b) from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against any Indemnified Parties by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties.  Should Indemnified Parties incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Security Instrument and the other Loan Documents, and Borrower shall reimburse such Indemnified Parties therefor immediately upon demand and upon the failure of Borrower to do Lender may, at its option, declare all sums secured by this Assignment and by the Security Instrument and the other Loan Documents immediately due and payable.  This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property including, without limitation, the presence of any Hazardous Substances (as defined in the Environmental Indemnity), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.  For purposes of this Article 4, the term "*Indemnified Parties*" means Lender and any Person who is or will have been involved in the origination of the Loan, any Person who is or will have been involved in the servicing of the Loan secured hereby, any Person in whose name the encumbrance created by this Assignment is or will have been recorded, persons and entities who may hold or acquire or will have held a full or partial interest in the Loan (including, but not limited to, investors or prospective investors in the Securities, as well as custodians, trustees and other fiduciaries who hold or have held a full or partial interest in the Loan for the benefit of third parties) as well as the respective directors, officers, shareholders, partners, members, employees, agents, servants, representatives, contractors, subcontractors, affiliates, subsidiaries, participants, successors and assigns of any and all of the foregoing (including but not limited to any other Person who holds or acquires or will have held a participation or other full or partial interest in the Loan, whether during the term of the Loan

-44830-2807-3232

5

or as a part of or following a foreclosure of the Loan and including, but not limited to, any successors by merger, consolidation or acquisition of all or a substantial portion of Lender's assets and business). The provisions of this Section 4.1 shall survive any payment or prepayment of the Loan and any foreclosure or satisfaction of the Security Instrument.

4.2    **No Mortgagee in Possession**.    Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender. In the exercise of the powers herein granted to Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

4.3    **Further Assurances**.    Borrower will, at the cost of Borrower and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter to be assigned, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver, and hereby authorizes Lender to execute in the name of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

## ARTICLE 5 - MISCELLANEOUS PROVISIONS

5.1    **Conflict of Terms**.    In case of any conflict between the terms of this Assignment and the terms of the Loan Agreement, the terms of the Loan Agreement shall prevail.

5.2    **No Oral Change**.    This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

5.3    **General Definitions**.    Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note, the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Loan Agreement, the word "Property" shall include any portion of the Property and any interest therein, the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorney's, paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

5.4    **Inapplicable Provisions**.    All rights, powers and remedies provided in this Assignment may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Assignment invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Assignment or any application thereof shall be invalid or

unenforceable, the remainder of this Assignment and any other application of the term shall not be affected thereby.

5.5 **Governing Law**. This Assignment shall be governed in accordance with the terms and provisions of <u>Section 10.3</u> of the Loan Agreement.

5.6 **Termination of Assignment**. Upon payment in full of the Obligations, this Assignment shall become and be void and of no effect.

5.7 **Notices**. All notices or other written communications hereunder shall be delivered in accordance with <u>Section 10.6</u> of the Loan Agreement.

5.8 **WAIVER OF TRIAL BY JURY**. BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE SECURITY INSTRUMENT, THE NOTE, OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

5.9 **Exculpation**. The provisions of <u>Section 3.1</u> of the Loan Agreement are hereby incorporated by reference into this Assignment to the same extent and with the same force as if fully set forth herein.

5.10 **Successors and Assigns**. This Assignment shall be binding upon and shall inure to the benefit of Borrower and Lender and their respective successors and permitted assigns forever, Lender shall have the right to assign, sell, pledge, participate, delegate, or transfer, as applicable, to one or more Persons, all or any portion of its rights and obligations under this Assignment in connection with any assignment of the Loan and the Loan Documents to any Person. Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Assignment. Borrower shall not have the right to assign, delegate or transfer its rights or obligations under this Assignment without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment, delegation or transfer without such consent shall be null and void.

5.11 **Headings, Etc.** The headings and captions of the various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

44430-2807-3232

7

IN WITNESS WHEREOF, Borrower has executed this Assignment of Leases and Rents the day and year first above written.

**BORROWER:**

NEELKANTH HOTELS LLC,
a Georgia, limited liability company

By:_____

Name:    Hemant Thaker
Title:    Managing Member

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: 02/23/16

[AFFIX NOTARIAL SEAL]

*Notary Page to Assignment of Leases and Rents*

-44850-2807-3232

36

## EXHIBIT "A"
[LEGAL DESCRIPTION]

ALL that tract or parcel of land lying and being in Land Lot 299 of the 16th District of Rockdale County, City of Conyers, Georgia, and being more particularly described as follows:

BEGINNING at a point at the intersection of the eastern right of way of Green Street, (being a 60 foot right of way) with the extension of the centerline of Fairground Street;

THENCE southeast along said right of way of Green Street, 256.35 feet to a point and the true point of beginning.

THENCE leaving said right of way of Green Street, North 67 degrees 44 minutes 02 seconds East, a distance of 153.35 feet to a point;

THENCE North 89 degrees 55 minutes 05 seconds East, a distance of 236.88 feet to a point;

THENCE South 57 degrees 49 minutes 13 seconds East a distance of 66.20 feet to a point;

THENCE South 86 degrees 53 minutes 11 seconds East, a distance of 475.41 (Survey) 387.92 (Deed) feet to a point;

THENCE South 08 degrees 26 minutes 36 seconds West, a distance of 68.17 (Survey) 67.09 (Deed) feet to a concrete monument found;

THENCE North 86 degrees 50 minutes 09 seconds West, a distance of 539.20 feet to an iron pin found;

THENCE South 00 degrees 47 minutes 15 seconds West, a distance of 106.66 feet to an axle found;

THENCE North 87 degrees 15 minutes 22 seconds West, a distance of 306.50 feet to an axle found on the eastern right of way of Green Street;

THENCE along the eastern right of way of Green Street North 22 degrees 01 minute 49 seconds West, a distance of 142.71 feet to a point and the true point of BEGINNING.

PARCEL ID NO. C29-0-03-019A

-44830-2807-3232

# Exhibit C

38 DB 12 C3

Doc ID:    008782690003 Type: ASGN
Recorded: 12/10/2012 at 04:47:40 PM
Fee Amt: $14.00 Page 1 of 3
Rockdale County Superior Court
Ruth A. Wilson Clerk

BK **5276** PG**48-50**

THIS DOCUMENT PREPARED BY AND
UPON RECORDATION RETURN TO:
ANDERSON, McCOY & ORTA, P.C.
100 North Broadway, Suite 2600
Oklahoma City, Oklahoma 73102
Telephone: 888-236-0007
**Rockdale County, Georgia**
Parcel Number: C29-0-03-019A

## ASSIGNMENT OF DEED TO SECURE DEBT, SECURITY AGREEMENT,
## ASSIGNMENT OF LEASES AND FIXTURE FILING
## AND
## ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

KNOW THAT

**CANTOR COMMERCIAL REAL ESTATE LENDING, L.P., a Delaware limited partnership**, having an address at 110 East 59th Street, 6th Floor, New York, NY 10022 ("Assignor"),

For valuable consideration given by:

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF COMM 2012-CCRE3 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES**, having an address at 190 S. LaSalle Street, 7th Floor, Mail Code MK-IL-SL7, Chicago, IL 60603 ("Assignee"),

the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby grant, bargain, sell, convey, assign, transfer, and set over, without recourse, representation and warranty, all of Assignor's right, title and interest, of any kind whatsoever, in and to the subject note(s) and loan documents, and including that of mortgagee, beneficiary, payee, assignee or secured party (as the case may be), in and to the following:

DEED TO SECURE DEBT, SECURITY AGREEMENT, ASSIGNMENT
OF LEASES AND FIXTURE FILING (as same may have been amended)
by Neelkanth Hotels LLC, a Georgia limited liability company
("Borrower"), to Assignor, and recorded September 10, 2012, as Document
Number 008726810024, in Book 5224, Pages 110-133, in the Real Estate
Records pertaining to the land situated in the State of Georgia, County of
Rockdale ("Real Estate Records");

AMO Ref.: 6203.037
Loan/File Name: Holiday Inn Express Conyers

39

ASSIGNMENT OF LEASES AND RENTS (as same may have been amended) by Borrower to Assignor, and recorded September 10, 2012, as Document Number 008726820010, in Book 5224, Pages 134-143, in the Real Estate Records;

TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

**(The remainder of this page has been intentionally left blank.)**

Witness:

Name: Emily Johnson

Name: Shannon Black

ASSIGNOR:

Cantor Commercial Real Estate Lending, L.P.,
a Delaware limited partnership

By: _____

Name: Jill A. Weinstein
Title: Secretary

STATE OF NEW YORK       )
                        )
COUNTY OF NEW YORK      )

On the 18th day of October, 2012 before me, a Notary Public in and for said state, personally appeared Jill A. Weinstein, Secretary, of Cantor Commercial Real Estate Lending, L.P., personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

My Commission Expires:

Signature: _____

Notary Public

GARY F. STELLATO
Notary Public, State of New York
No. 02ST6091334
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires April 28, 2015

N. P.
SEAL

41

# Exhibit D

Prepared by, and after recording
return to:

W. Gregory Null, Esq.
Carlton Fields, P.A.
1201 W. Peachtree Street N.W.
Suite 3000
Atlanta, Georgia 30309

## REINSTATEMENT AND MODIFICATION AGREEMENT

by and between

NEELKANTH HOTELS LLC, a Georgia limited liability company
as Borrower,

and

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF
COMM 2012-CCRE3 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES
as Lender.

Dated as of February 7, 2020

## REINSTATEMENT AND MODIFICATION AGREEMENT

**THIS REINSTATEMENT AND MODIFICATION AGREEMENT** (this "*Agreement*") is made and entered into to be effective as of February 7, 2020 (the "*Effective Date*"), by and among **NEELKANTH HOTELS LLC,** a Georgia limited liability company ("*Borrower*"), **HEMANT THAKER,** an individual resident of the State of Georgia, **ASHISH THAKER** an individual resident of the State of Georgia, **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF COMM 2012-CCRE3 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES** ("*Lender*").

<u>RECITALS</u>

A.      On August 30, 2012, Cantor Commercial Real Estate Lending, L.P. ("*Original Lender*") made a loan (the "*Loan*") to Borrower in the original principal amount of $6,000,000.00 which is evidenced by that certain Promissory Note, dated August 30, 2012 in the original principal amount $6,000,000.00 from Borrower and payable to the order of Original Lender (the "*Note*") and which is governed by, among other things that certain Loan Agreement, dated August 30, 2012 executed by and between Original Lender and Borrower ("*Loan Agreement*").

B.      The Note is secured by, among other things that certain: (i) Deed to Secure Debt, Security Deed, Assignment of Leases and Fixture Filing dated August 30, 2012, executed by Borrower in favor of Original Lender and recorded on September 10, 2012, as Document Number 008726810024, in Book 5224, Page 110, in the "*Real Estate Records*" pertaining to the land situated in the State of Georgia, County of Rockdale (the "*Security Instrument*") which is more particularly described therein and as set forth on **Exhibit A** attached hereto (the "*Property*"); and (ii) Assignment of Leases and Rents, and executed by Borrower in favor of Original Lender, dated August 30 2012 and recorded on September 10, 2012, as Document Number 008726820010, in Book 5224, Page 134, in the Real Estate Records pertaining to the Property (the "*Assignment of Rents*", together with the Note, Security Instrument, Loan Agreement and all other documents evidencing or securing the Loan, the "*Loan Documents*").

C.      As additional security of the repayment of the Note and the Obligations, Rupa K. Gupta ("*Gupta*") and Hemant Thaker ("*H. Thaker*") each executed a Guaranty of Recourse Obligations, dated as of August 30, 2012 in favor of Original Lender (together, the "*Existing Guaranties*", each an "*Existing Guaranty*" and collectively with the Assignment of Rents, Note, Security Instrument, Loan Agreement and all other documents evidencing or securing the Loan, the "*Loan Documents*")

D.      Original Lender assigned, negotiated and transferred its interest in the Note, Security Instrument, and all other Loan Documents to Lender pursuant to, inter alia, that certain Assignment of Deed to Secure Debt, Security Agreement, Assignment of Leases and Fixture Filing and Assignment of Assignment of Leases and Rents recorded on December 10, 2012, as Document ID 008782690003, as Book 5276, Page 48, in the Real Estate Records pertaining to the Property. Lender is now the owner and holder of the Note, Security Instrument and other Loan Documents.

E.      Midland Loan Services, a division of PNC Bank, National Association, in its capacity as special servicer ("*Servicer*") services the Loan on behalf of Lender.

REINSTATEMENT
[AND MODIFICATION] AGREEMENT – Page 1                    (Rev. 07-27-07)

F.      Borrower defaulted under the Loan Documents, by, *inter alia*: (i)  failing to extend the terms of that certain franchise agreement with Holiday Hospitality, LLC which expired on October 9, 2018; (ii) entering into a franchise agreement with Best Western without Lender's consent; (iii) closing the Property for business while certain improvements were performed; (iv) violating the Special Purpose Entity requirements in the Loan Documents by virtue of acquiring the Vacant Parcel[1] subsequent to the closing of the Loan which is not encumbered by the Security Instrument; (v) permitting that certain Claim of Lien[2] to be recorded against the Property, which as of the date hereof remains unsatisfied; and (vi) failing to pay the monthly installment of principal, interest and escrow/reserves due for November 2019 and thereafter (collectively, the "*Defaults*").

G.      Due to the Defaults and Borrower's failure to cure the same, Lender accelerated the Note and indebtedness due and owing under the Loan Documents and on or about December 10, 2019 commenced a proceeding to appoint a receiver for the Property in the Superior Court of Forsyth County, Georgia pending as Case No. 19-CV-2137-3 (the "*Enforcement Proceeding*").

H.      Borrower transmitted the sum of Seventy Five Thousand ($75,000.00) Dollars to  the trust account of Lender's counsel, Carlton Fields, P.A. as a cost deposit and as a condition precedent to entering into this Agreement(the "*Retainer Deposit*"). Borrower agrees and acknowledges that the Retainer Deposit has been transferred to the Servicer on behalf of Lender and is non-refundable.

I.      Borrower and Lender desire to enter into this Agreement for the purpose of reinstating the Loan and modifying certain terms of the Loan Documents, subject to and pursuant to the terms of this Agreement. In connection herewith, Ashish Thaker ("*A. Thaker*") and H. Thaker  shall execute and deliver in favor of Lender that certain Guaranty dated as of even date herewith, in favor of Lender for purposes of guaranteeing full and prompt payment of the Loan (the "*Payment Guaranty*"). For purposes hereof, A. Thaker, H. Thaker and Gupta shall be collectively referred to as the "*Guarantors*", each being a "*Guarantor*".

**NOW, THEREFORE**, for and in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower, Lender, and Servicer hereby incorporate the above recitals herein and agree as follows:

ARTICLE I

DEFINITIONS

Best Western. The term "Best Western" shall mean Best Western International, Inc., the franchisor under the Franchise Agreement.

---

[1]      The "*Vacant Parcel*" is more particularly described in that certain Limited Warranty Deed with Reservations dated April 4, 2014, which was recorded on April 18, 2014, as Document Number 009083420007, in Book 5527, Page 303, in the Real Estate Records pertaining to the in the Real Estate Records pertaining to the land situated in the State of Georgia, County of Rockdale.

[2]      The Claim of Lien was recorded on July 26, 2019, in Book 600, Page 56, in the Real Estate Records pertaining to the land situated in the State of Georgia, County of Rockdale (the "*Claim of Lien*"). An action was filed in connection with the Claim of Lien as evidenced by that certain Notice of Filing of Lien Action recorded on December 17, 2019 in Book 608, Page 62 in the Real Estate Records pertaining to the land situated in the State of Georgia, County of Rockdale which action is pending as *Cummings Resources LLC v. Neelkanth Hotels LLC*, Civil Action No. 2019-CV-2657 (the "*Claim of Lien Lawsuit*").

REINSTATEMENT
AND MODIFICATION AGREEMENT – Page 2                      (Rev. 07-27-07)
120693576.34

<u>Comfort Letter</u>. The term "Comfort Letter" shall mean that certain letter agreement from Best Western for the benefit of Lender with respect to the Property and the Franchise Agreement, which shall include, among other things, estoppel information issued by Best Western concerning the Property and the Franchise Agreement to be delivered to Lender which is in all respects reasonably acceptable to Lender.

<u>Event of Default.</u>  The term "Event of Default" shall mean a breach of or default or Event of Default under the Note, the Security Instrument, the other Loan Documents or this Agreement.

<u>Franchise Agreement</u>.  The term "Franchise Agreement" shall mean that certain Membership Agreement by and between Borrower and Best Western dated December 26, 2017.

<u>Incorporation of Other Definitions.</u>  All capitalized terms not defined herein shall have the same meanings as ascribed to such terms in the Loan Agreement.  In cases of multiple definitions or conflicts, the definitions set forth in this Agreement shall control.

## ARTICLE II

## REINSTATEMENT AND MODIFICATION

2.01    <u>Agreement to Reinstate and Modify the Loan.</u>  The Note, Security Instrument and each of the other Loan Documents are hereby reinstated in accordance with their respective terms and conditions, as modified by this Agreement.  Borrower hereby renews, ratifies and affirms, but does not extinguish, and agrees that Borrower is and shall be primarily obligated for payment and performance of the Note and the liens, security interests and assignment created and evidenced by the Security Instrument.  Notwithstanding any implication or agreement herein relating to the reinstatement and modification of the Loan Documents (including, without limitation, any prior course of conduct by any party hereto), Borrower agrees that Lender shall and will hereafter require full and prompt performance of any and all terms, conditions or requirements of all documents executed between, among or for the benefit of all parties signatory hereto.  Borrower acknowledges and agrees that any performance or nonperformance of the terms of the Note, Security Instrument, or the other Loan Documents prior to the date of this Agreement shall not effect or diminish in any way the requirement of strict compliance of the Note, Security Instrument and the other Loan Documents.  Borrower agrees to perform, in accordance with all their terms and conditions, the Note, Security Instrument and the other Loan Documents, as modified by this Agreement. Lender acknowledges that subject to the terms hereof: (i) the Franchise Agreement is approved; (ii) the Borrower Organizational Documents provided by Borrower are approved; and (iii) as of the Effective Date hereof, the Lender is not aware of any other events of default under the Loan Documents. Moreover, Borrower acknowledges that the Cash Trap Period remains in effect subject to the terms of the Loan Documents.

2.02.    <u>Loan Information.</u> Borrower hereby acknowledges, and certifies to Lender that as of the Effective Date (without giving effect to the application of the Reinstatement Amount in Section 2.03 hereof), the outstanding principal balance of the Note is $5,004,693.20.

2.03.    <u>Reinstatement Amount.</u> Concurrently with the Effective Date hereof, Borrower shall pay to Servicer, for the benefit of Lender, the sum of $160,623.37 (the "***Reinstatement Amount***") made up of the following fees and costs due to Lender as of the Effective Date:

    a.   Reinstatement Fees: $50,046.93;

    b.   January 2020 payment in the amount of $57,100.60[3];

    c.   February 2020 payment in the amount of $57,100.60[4];

    d.   Receiver Expenses: $6,741.61;

    e.   Costs of $885.53;

    f.   Special servicing fees of $10,486.77;

    g.   Legal fees and costs of $96,564.00;

    h.   Late fees of $14,247.93; and,

    i.   Less the Retainer Deposit in the amount of $75,000.00.

    j.   Less the sum of $57,550.60 transferred to Lender.

The Reinstatement Amount and any other fees, expenses and adjustments due and owing under the Loan Documents or in connection with the Loan and this Agreement shall be paid in accordance with Lender's settlement charges statement (the "***Settlement Statement***") delivered herewith for signature by Borrower. In addition, Borrower shall pay all of Lender's attorneys' fees incurred in connection with this Agreement, which amount shall be deemed to be added to the Reinstatement Amount pursuant to the terms of this Agreement.

    2.04.   <u>Required Items.</u>  Prior to or concurrently with the Effective Date of this Agreement, Borrower shall have delivered to Lender the following items:

    a.   a Comfort Letter, all in form and in substance which is acceptable to Lender in its sole discretion executed by Borrower and Best Western and to be executed by Lender;

    b.   (i) an updated organizational chart concerning the organizational structure of Borrower; (ii) evidence concerning the transfer of membership interests to H. Thaker and the A. Thaker; (iii) all updated organizational documents concerning the Borrower, including without limitation articles of organization and operating agreement(s), as amended; (iv) all other documentation concerning the Borrower, H. Thaker and A. Thaker as Lender may require in its sole discretion, all of which must be acceptable to Lender in form and in content ("***Borrower Organization Documents***").

    c.   The original Payment Guaranty executed by H. Thaker and A. Thaker.

    d.   All other information, documentation and all other required items to have caused the Rents to be deposited into the Clearing Account, including without limitation, any and all modifications to the Deposit Account Agreement as may be required. Moreover, Borrower shall have delivered to Lender any and all information required by Lender to calculate the Debt Service Coverage Ratio as of the Effective Date, including operating statements and other reports concerning the Property.

---

[3]    The January 2020 payment is comprised of: (i) principal and interest of $35,760.44; (ii) tax escrows of $10,172.63; (iii) insurance escrows of $3,089.02; and (iv) Reserves of $8,078.51.

[4]    The February 2020 payment is comprised of: (i) principal and interest of $35,760.44; (ii) tax escrows of $10,172.63; (iii) insurance escrows of $3,089.02; and (iv) Reserves of $8,078.51.

REINSTATEMENT
AND MODIFICATION AGREEMENT – Page 4             (Rev. 07-27-07)

120693576.34

2.05    <u>Additional Documents.</u>  Contemporaneously with the execution and delivery hereof, and as a condition to the Lender's obligations hereunder, Borrower, at its sole cost and expense, shall obtain and deliver to Lender (or cause to be delivered to Lender as the case may be) the following:

a.  A title search report with respect to the Property;

b.  a Certificate of Authority (i) authorizing the Borrower to modify the terms of the Loan Documents in accordance with the terms hereof, and (ii) authorizing the individual member executing this Agreement and any other instruments or documents executed in connection herewith to execute such documents on behalf of Borrower;

c.  a Certificate issued by the Secretary of State of Georgia evidencing the good standing and existence of the Borrower;

d.  a Resolution of the member of Borrower executing this Agreement [(i) authorizing the Borrower to extend the terms of the Loan in accordance with the terms hereof and (ii)] authorizing said member to execute this Agreement on behalf of the Borrower;

e.  the executed and notarized Borrower's Affidavit;

f.  the executed and notarized Non-foreign Affidavit; and

g.  an original opinion from Borrower's counsel in form and substance acceptable to Lender, opining as to the existence and good standing of the Borrower the due authorization and execution of this Agreement, and the validity, binding effect, and enforceability of this Agreement, all of which must be acceptable to Lender in its sole but reasonable discretion.

2.06.    <u>Conveyance of Vacant Parcel</u>. Within thirty (30) calendar days of the Effective Date, Borrower shall pay all sums and take all actions as may be required to fully execute the form of the quit-claim deed approved by Lender concerning the Vacant Parcel and to cause same to be recorded (and to otherwise cause the conveyance of the Vacant Parcel to the third party set forth in the approved quit claim deed). Borrower shall be required to deliver evidence thereof to Lender (including without limitation, copies of all recorded deed(s) and instruments regarding the conveyance of the Vacant Parcel), which must be acceptable to Lender in its sole but reasonable discretion. In the event Borrower fails to comply with the terms of this provision on or before the date aforesaid, Lender may, in its sole but reasonable discretion, deem same an Event of Default under the Loan Documents and demand full repayment of the Loan. Provided that Borrower has conveyed the Vacant Parcel as set forth herein and there are no other violations with respect to the Special Purpose Entity provisions in the Loan Documents, Borrower shall be deemed to be in compliance with the provisions of this Section 2.06.

2.07.    <u>Cure of Claim of Lien and Delivery of Title Endorsement</u>. Within thirty (30) calendar days of the Effective Date, Borrower shall pay all sums and take all actions as may be required to either: (i) fully satisfy the Claim of Lien; or (ii) to bond the Claim of Lien as may be required and deliver evidence thereof to Lender which must be acceptable to Lender in its sole but reasonable discretion ("***Lien Cure***"). In connection with the Lien Cure, Borrower may use all or a portion of the FF&E Reserve Funds not to exceed the PIP Costs Disbursement Cap (hereafter defined) for the purpose of the Lien Cure in accordance with the terms of this Agreement. Thereafter within fifteen (15) calendar days of the Lien Cure, Borrower shall take all actions, execute and deliver all documents and pay all sums as

may be required to cause a title endorsement to be issued and delivered in favor of Lender in connection with the existing mortgagee policy of title insurance ("***Existing Title Policy***") insuring the Security Instrument, as modified by this Agreement which: (i) updates the effective date of the Existing Title Policy through the date of the Lien Cure; (ii) reflects the satisfaction and/or cure of the Claim of Lien; and (iii) which is otherwise in form and substance acceptable to Lender in its sole but reasonable discretion (the "***Title Policy Endorsement***"). Notwithstanding the foregoing, in the event that Borrower at all times exercises commercially reasonable efforts to cause the issuance of the Title Policy Endorsement and is unable to deliver same to Lender by the above mentioned deadline, Borrower shall be entitled to an additional period not to exceed thirty (30) calendar days to cause the issuance of same. In the event Borrower fails to comply with the terms of this provision on or before the dates aforesaid, Lender may, in its sole discretion, deem same an Event of Default under the Loan Documents and demand full repayment of the Loan.

2.08.    <u>Liability of Guarantors.</u> Borrower and Lender agree that the Payment Guaranty is being delivered to Lender in order to further secure the Borrower's obligations under the Loan Documents in addition to the Existing Guaranties and that the Payment Guaranty shall not be deemed to replace or supersede the Existing Guaranties which shall remain in full force and effect. Moreover, Borrower and H. Thaker acknowledge and agree that due to the Defaults, Guarantors have become liable for the full amount of the Debt in connection with the Loan pursuant to Section 1.2(b) of the Guaranty. Notwithstanding the fact that Gupta has not joined into this Agreement, Gupta shall remain liable under the Existing Guaranty and other Loan Documents in accordance with the terms thereof and nothing contained herein shall be deemed to impair, diminish or waive Gupta's obligations thereunder.

2.09.    <u>Dismissal of Enforcement Proceedings, Modification of Note, Security Instrument and other Loan Documents.</u>  In the event that Borrower has satisfied each and every requirement set forth in this Agreement and is otherwise in compliance with the provisions of the Loan Documents (in a manner which is acceptable to Lender in its sole but reasonable discretion):

    a.   Dismissal of Enforcement Proceedings.    Lender shall cause the Joint Motion for Dismissal without Prejudice ("***Joint Motion for Dismissal***") to be filed in connection with the Enforcement Proceedings and to submit to the Court the proposed order in connection therewith and to take all reasonable steps to cause the same to be entered.

    b.   Intentionally deleted.

    c.   Excess Cash Reserve.    Borrower shall not be required to deposit with Lender the Excess Cash (if any) received by Borrower since the commencement of the Cash Trap Period through the Effective Date.  Nothing contained herein shall preclude Lender from instituting one or more Cash Trap Periods subject to and in accordance with the terms of the Loan Agreement or otherwise relieve Borrower from any of its other obligations with respect to the Cash Management Account under the Loan Documents.

    d.   Disbursement of FF&E Reserve Funds.    Notwithstanding Borrower's failure to deposit with Lender the PIP Reserve Funds associated with the PIP Costs pursuant to Section 7.4 of the Loan Agreement, Borrower may, from time to time draw upon the FF&E Reserve Funds in an amount not to exceed the aggregate sum of $91,325.42 ("***PIP Costs Disbursement Cap***") as may be required to satisfy the balance of the PIP Costs, subject to the terms of the Loan Documents, including without limitation, Section 7.4 of the Loan Agreement and

Borrower's obligation to deliver to Lender any all information and documentation required under Section 7.4.2 of the Loan Agreement. Notwithstanding the foregoing, Borrower shall first be required to utilize all or a portion of the FF&E Reserve Funds (which shall not exceed the PIP Costs Disbursement Cap) in order to satisfy and/or bond the Claim of Lien as set forth in Section 2.07 hereof and for no other purpose. Thereafter, once the Borrower delivers evidence acceptable to Lender that the Claim of Lien has been fully satisfied and/or duly bonded and Lender delivers written notice to Borrower, Borrower shall be entitled to utilize the balance of the FF&E Reserve Funds, if any, for the payment of the remaining PIP Costs which shall not exceed the PIP Costs Disbursement Cap in the aggregate as set forth herein. For the avoidance of doubt, Borrower may only draw upon the FF&E Reserve Funds under this section for accrued and unpaid invoices in connection with PIP Costs (as opposed to repaying Borrower for PIP Costs already paid by Borrower).

e.  Conditional Waiver of Default Interest. As a result of the Defaults, Borrower acknowledges and agrees that default interest in the amount of $393,162.67 (the "***Default Interest***") has accrued pursuant to the Loan Documents and remains outstanding and due and payable under the Loan. Borrower and Lender have agreed that, so long as (a) Borrower pays all of the monthly payment amounts due to Lender (including without limitation, the Monthly Debt Service Payment Amount and the Reserve Funds) on or before the due dates thereof, (b) Borrower satisfies the Loan on or before the Maturity Date; and (c) No Event of Default occurs under the Loan Documents from and after the Effective Date, then Lender shall waive the Default Interest when the Loan is paid in full.

Notwithstanding anything contained herein to the contrary, Lender shall have no obligation whatsoever to take any action under this Section 2.09 unless Borrower has satisfied all of its requirements under this Agreement pursuant to the terms hereof.

2.10.  Prior Defaults.  Lender, without prejudice to or waiver of any right or remedy available to it by reason of the occurrence subsequent to the date hereof of an event constituting an Event of Default under the Note, Security Instrument or the other Loan Documents, hereby agrees to take no action with respect to any of the Defaults or with any other Event of Default which heretofore has occurred of which Lender has actual, current knowledge, subject to the terms hereof.

2.11.  Continuing Validity.  Borrower hereby agrees that the reinstatement and modification set forth herein shall in no manner affect or impair the Note or the liens securing the Note and that the liens of the Security Instrument shall not in any manner be waived, the purpose of this Agreement being simply to reinstate and to modify the Note and to carry forward all liens securing the Note. Borrower hereby acknowledges that the liens and security interests created and evidenced in the Security Instrument are valid and subsisting, and that the Note, the Security Instrument and the other Loan Documents shall remain in full force and effect[,as modified hereby]. The validity, binding effect, enforceability or perfection of the Note, the Security Instrument, this Agreement or any of the other Loan Documents shall not be diminished in any way by this Agreement. Borrower further acknowledges and agrees that the Security Instrument is a first and superior lien on the Property. Borrower hereby further acknowledges and agrees that there are no offsets, claims or defenses to the Note or the Security Instrument or any other documents evidencing or securing the Loan. Borrower represents to Lender that to the best of Borrower's knowledge there exists no uncured Event of Default under the Note, the Security Instrument, or any other Loan Document.

REINSTATEMENT
AND MODIFICATION AGREEMENT – Page 7                                    (Rev. 07-27-07)
120693576.34

# ARTICLE III
## MISCELLANEOUS

3.01    Entire Agreement; Modification; Reinstatement.    This Agreement embodies and constitutes the entire understanding among the parties with respect to the reinstatement and modification contemplated herein, and all prior or contemporaneous agreements, understandings, representations, and statements, oral or written, are merged into this Agreement.    Neither this Agreement nor any provision herein may be waived, modified, amended, discharged, or terminated except by an instrument in writing signed by the party against which the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.    The Note, Security Instrument and other Loan Documents shall remain in full force and effect and this Agreement shall have no effect on the priority or validity of the liens set forth in the Security Instrument or the other Loan Documents, which are incorporated herein by reference.    Borrower hereby reaffirms the agreements made by it to Servicer and Lender in connection with the Loan and agrees that, except to the extent modified hereby, all of such agreements remain in full force and effect.

3.02    Complete Release.    Borrower, A. Thaker and H. Thaker hereby  release and forever discharge Lender, the Servicer, and their respective predecessors, successors, assigns, affiliates, officers, directors, employees, attorneys, agents and each current or substitute trustee under the Security Instrument (collectively, the "Indemnitee"), from all "Claims" as defined below, and jointly and severally agree to indemnify Indemnitee, and hold them harmless from any and all claims, losses, causes of action, costs and expenses of every kind or character in connection with the Claims or the breach of this Agreement or the other Loan Documents.    As used in this Agreement, the term "Claims" shall mean any and all possible claims, demands, actions, causes of action, costs, expenses and liabilities whatsoever, known or unknown, at law or in equity, originating in whole or in part, on or before the date of this Agreement, including but not limited to claims based on usury, violations of law relating to hazardous substance or environmental contamination, which the Borrower, or any of its beneficiaries, may now or hereafter have against the Indemnitee, if any, and irrespective of whether any such Claims arise out of contract, tort, violation of laws, or regulations, or otherwise in connection with any of the Loan Documents, including, without limitation, any contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate applicable thereto and any loss, cost or damage, of any kind or character, arising out of or in any way connected with or in any way resulting from the acts, actions or omissions of Indemnitee, including any breach or fiduciary duty, breach of any duty of fair dealing, breach of confidence, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, deceptive trade practices, libel, slander, conspiracy or any claim for wrongfully accelerating the Note or wrongfully attempting to foreclose on any collateral relating to the Note, but in each case only to the extent permitted by applicable law.    This release is solely for the benefit of the Indemnitee and not for any third parties.    This release is accepted by Lender and Servicer pursuant to this Agreement and shall not be construed as an admission of liability on the part of Lender or the Servicer.    Borrower, A. Thaker, H. Thaker, Lender, and Servicer have negotiated this Agreement at arms' length, and Borrower, A. Thaker and H. Thaker are not in a disparate bargaining position relative to Lender and Servicer.    Borrower, A. Thaker and H. Thaker have carefully evaluated the provisions of this Agreement.    Borrower acknowledges and agrees that Borrower's relationship with Lender is strictly that of borrower to creditor, that no special relationship exists between Borrower and

Lender and that Lender has no fiduciary obligation or similar obligation to Borrower. Lender hereby disclaims any and all implied obligations to Borrower, including but not limited to any obligation to consider or look out for the interests of Borrower and any other obligation not expressly stated in the Loan Documents or herein. Borrower hereby represents and warrants that Borrower is the current legal and beneficial owner of all Claims, if any, released hereby and it has not transferred, pledged or assigned or agreed to transfer, pledge or assign to any other individual or entity any of the Claims described in this section.

     3.03   <u>Conflicting Terms.</u>  In the event of any conflict between the terms hereof, the Note, Loan Agreement, the Security Instrument or any other Loan Document, the terms of this Agreement shall control.

     3.04   <u>Usury.</u>  It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable state law governing the maximum rate or amount of interest payable on or in connection with the Note and the Loan contemplated by the Note (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under state law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under the Note or under the Security Instrument, this Agreement or any other Loan Document evidencing, securing or executed in connection with the Loan, or contracted for, charged, taken, reserved or received with respect to the Loan, or if acceleration of the maturity of the Note or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by law, then it is Borrower's and Lender's express intent that all excess amounts theretofore collected by Lender be credited on the principal balance of the Note (or, if the Note has been or would thereby be paid in full, refunded to Borrower), and the provisions of the Note, this Agreement, Security Instrument and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. The rights to accelerate maturity of the Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness evidenced by the Note or other Loan Documents shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in the Note, the Security Instrument, this Agreement or in any of the other Loan Documents that permits the compounding of interest, including, without limitation, any provision by which any of the accrued interest is added to the principal amount of the Note, the total amount of interest that Borrower is obligated to pay and Lender is entitled to receive with respect to the Loan shall not exceed the amount calculated on a simple (i.e., non-compounded) interest basis at the maximum rate allowed by applicable law on principal amounts actually advanced to or for the account of Borrower, including all current and prior advances and any advances made pursuant to the Security Instrument, this Agreement or the other Loan Documents (such as for payment of taxes, insurance premiums and the like). The provisions of the Note and Security Instrument limiting the amount of interest which may be contracted for, charged or received on the indebtedness evidenced thereby and dealing with the rights and duties of the parties with respect to the charging or receiving of interest in excess of the maximum rate, are hereby incorporated in this Agreement by reference as though fully set forth herein. To the extent permitted by law, Borrower

hereby waives and releases all claims and defenses based upon usury in connection with the execution of the Note, the borrowing of the Loan evidenced thereby and the execution of the Security Instrument.

3.06    Counterparts.  This Agreement may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document.  All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

3.07    No Oral Agreements.    THIS AGREEMENT AND THE OTHER WRITINGS RELATING TO THE LOAN CONSTITUTE A WRITTEN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND WHICH MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THE LOAN.

3.08    Costs and Expenses.  Contemporaneously with the execution and delivery hereof, and as a condition to the effectiveness hereof, Borrower shall pay or cause to be paid, all accrued interest on the Note and all costs and expenses incident to the preparation hereof and the consummation of the transactions specified herein, including, without limitation, the premium for the title insurance policy or binder, fees and expenses of legal counsel to Lender and Servicer, and recording fees. For the avoidance of doubt, Borrower acknowledges that in addition to the foregoing fees, costs and expenses, it shall be responsible for the payment of any and all special servicing fees and costs incurred or to be incurred in connection with the Loan.

3.09    Additional Documents.  From time to time, as requested, Borrower shall execute and deliver to Lender such other and further documents and instruments evidencing and pertaining to the Loan as modified and amended hereby, as reasonably shall be requested by Lender so as to evidence or effect the terms and conditions hereof.

3.10    Applicable Law.  This Agreement shall be governed by and construed according to the laws of the state or territory where the Property is situated (without giving effect to the principles of conflict of law of such state or territory).

*[Remainder of page intentionally left blank]*

EXECUTED on the date first set forth above, to be effective as of the date first above written.

BORROWER:

Address:                                   NEELKANTH HOTELS LLC, a Georgia limited liability company

5400 Laurel Spring Parkway
Suite 202
Suwanee GA 30024                    By: _____
                                                 Hemant Thaker, Managing Member


STATE OF GEORGIA        §
                                      §
COUNTY OF CHEROKEE  §


This instrument was acknowledged before me on the 7th day of February, 2020, by Hemant Thaker as the _____, Managing Member of NEELKANTH HOTELS LLC, a Georgia limited liability company, on behalf of said company, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

                                    _____
                                    Notary Public in and for the
                                    State of GEORGIA

My Commission Expires:

June 18, 2021

APRIL BAEZ MCRAE
NOTARY
EXPIRES
GEORGIA
June 18, 2021
PUBLIC
CHEROKEE COUNTY


[SIGNATURE AND ACKNOWLEDGMENT OF BORROWER]

EXECUTED on the date first set forth above, to be effective as of the date first above written.

Address:

5400 Laurel Springs Parkway
Suite 202
Suwanee GA 30024

By: _____

ASHISH THAKER

This instrument was acknowledged before me on the 7th day of February, 2019, by ASHISH THAKER, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Notary Public in and for the
State of GEORGIA

My Commission Expires:
JUNE 18, 2021

APRIL BAEZ MCRAE
NOTARY
GEORGIA
EXPIRES
June 18, 2021
PUBLIC
CHEROKEE COUNTY

[SIGNATURE AND ACKNOWLEDGMENT OF ASHISH THAKER]

REINSTATEMENT
AND MODIFICATION AGREEMENT – Page 12    (Rev. 07-27-07)
120693576.20

EXECUTED on the date first set forth above, to be effective as of the date first above written.

Address:

5400 Laurel Springs Pkway
Suite 202
Suwanee GA 30024

By: _____
HEMANT THAKER

This instrument was acknowledged before me on the 7th day of February, 2020, by HEMANT THAKER, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Notary Public in and for the State of GEORGIA

My Commission Expires:
JUNE 18, 2021

[SIGNATURE AND ACKNOWLEDGMENT OF HEMANT THAKER]

EXECUTED on the date first set forth above, to be effective as of the date first above written.

LENDER:

U.S. BANK NATIONAL ASSOCIATION, as Trustee for the registered holders of COMM 2012-CCRE3 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES

By: Midland Loan Services, a Division of PNC Bank, National Association, as special servicer

Address:
_10857 Martin_
_Overland Park, KS_
Attn: _Steve Taylor_

By: _____
Name: __David D. Spotts__
Its: __Senior Vice President__
Servicing Officer

STATE OF _Kansas_              §
                                        §
COUNTY OF _Johnson_         §

This instrument was acknowledged before me on the _7_ day of _February 2020_, by _____ _David D Spotts, SBVice-President_, of Midland Loan Services, a Division of PNC Bank, National Association, as the special servicer of Lender, a corporation organized and existing pursuant to the laws of the United States of America, on behalf of said corporation.

_____
Notary Public in and for the
State of _Kansas_

My Commission Expires:
_5-7-2020_

NOTARY PUBLIC - State of Kansas
VIRGINIA L. UMSCHEID
My Appt. Expires _5-7-2020_

REINSTATEMENT
AND MODIFICATION AGREEMENT – Page 14
121021595.1

(Rev. 07-27-07)

## EXHIBIT A

### LEGAL DESCRIPTION

ALL that tract or parcel of land lying and being in Land Lot 299 of the 16th District of Rockdale County, City of Conyers, Georgia, and being more particularly described as follows:

BEGINNING at a point at the intersection of the eastern right of way of Green Street, (being a 60 foot right of way) with the extension of the centerline of Fairground Street;

THENCE southeast along said right of way of Green Street, 256.35 feet to a point and the true point of beginning.

THENCE leaving said right of way of Green Street, North 67 degrees 44 minutes 02 seconds East, a distance of 153.35 feet to a point;

THENCE North 89 degrees 55 minutes 05 seconds East, a distance of 236.88 feet to a point;

THENCE South 57 degrees 49 minutes 13 seconds East a distance of 66.20 feet to a point;

THENCE South 86 degrees 53 minutes 11 seconds East, a distance of 475.41 (Survey) 387.92 (Deed) feet to a point;

THENCE South 08 degrees 26 minutes 36 seconds West, a distance of 68.17 (Survey) 67.09 (Deed) feet to a concrete monument found;

THENCE North 86 degrees 50 minutes 09 seconds West, a distance of 539.20 feet to an iron pin found;

THENCE South 00 degrees 47 minutes 15 seconds West, a distance of 106.66 feet to an axle found;

THENCE North 87 degrees 15 minutes 22 seconds West, a distance of 306.50 feet to an axle found on the eastern right of way of Green Street;

THENCE along the eastern right of way of Green Street North 22 degrees 01 minute 49 seconds West, a distance of 142.71 feet to a point and the true point of BEGINNING.

PARCEL ID NO. C29-0-03-019A