UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                              )        CHAPTER 11
                                    )
NEELKANTH HOTELS, LLC               )        CASE NUMBER: 20-69501-JWC
                                    )
        Debtor.                     )
                                    )

## DEBTOR'S DISCLOSURE STATEMENT

Filed by

Neelkanth Hotels, LLC

Debtor and Debtor in Possession

Attorneys for Debtor
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street NE, Suite 800
Atlanta, Georgia 30309
404-681-3450

1

## I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 bankruptcy case of Neelkanth Hotels, LLC (the "Debtor"). Debtor commenced this case on August 31, 2020 by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §1101 et seq. (the "Bankruptcy Code"). This Disclosure Statement contains information about Debtor and describes the Chapter 11 Reorganization Plan (the "Plan") to be filed by Debtor.  *Your rights may be affected. You should read this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

### A.  PURPOSE OF THIS DOCUMENT

This Disclosure Statement describes:

- Debtor and significant events during the bankruptcy case
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why Debtor believes the Plan is feasible and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Plan and the general provisions of the Plan.

Be sure to read the Plan as well as this Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.  Identity of Person to Contact for More Information

If you desire additional information about these Disclosures or the Plan, you should contact John A. Christy, Schreeder, Wheeler & Flint, LLP, 1100 Peachtree Street NE, Suite 800, Atlanta,

Georgia 30309, 404-681-3450.

### C. DISCLAIMER

THE REPRESENTATIONS IN THIS DISCLOSURE STATEMENT ARE THOSE OF DEBTOR. NO REPRESENTATIONS CONCERNING DEBTOR ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THIS PLAN OTHER THAN AS CONTAINED IN THIS DOCUMENT SHOULD NOT BE RELIED UPON BY ANY PERSON.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. EVERY EFFORT HAS BEEN MADE TO PROVIDE ADEQUATE AND ACCURATE FINANCIAL INFORMATION IN THIS DISCLOSURE STATEMENT. ALTHOUGH EVERY EFFORT HAS BEEN MADE TO BE ACCURATE, NEITHER THE PLAN NOR THIS DISCLOSURE STATEMENT HAS BEEN DESIGNED TO FORECAST CONSEQUENCES WHICH FOLLOW FROM A GENERAL REJECTION OF THE PLAN, ALTHOUGH AN ATTEMPT IS MADE TO STATE THE CONSEQUENCES OF A LIQUIDATION OF DEBTOR.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN, AND IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN, BUT TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN. CAPITALIZED TERMS AND DEFINITIONS CONTAINED IN THIS DISCLOSURE STATEMENT HAVE THE MEANING ASSIGNED IN THE ACCOMPANYING PLAN. IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN. ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN DEBTOR'S CHAPTER 11 CASE, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT INACCURACY OR OMISSION.

## II. BACKGROUND

### A. DESCRIPTION AND HISTORY OF DEBTOR'S BUSINESS

Debtor was formed on January 5, 2007 by the filing of the Articles of Organization with the

Georgia Secretary of State. Debtor operates a single hotel at 1302 Green Street SE, Conyers, Georgia 30012, under a Best Western Premier franchise ("the Hotel").

The Hotel contains 99 guest suites, and operates as a Best Western Premier by virtue of a Membership Agreement with Best Western International, Inc. dated December 26, 2017. The Membership Agreement is for a term of twenty years. The Hotel was formerly branded as a Holiday Inn Express but the franchise agreement with Holiday Hospitality Franchising, LLC expired on or about October 9, 2018, by its terms.

The Hotel was constructed in 2008, and was renovated in 2018 and 2019 in connection with its rebranding.  The franchise agreement with Best Western Premier requires Debtor to maintain certain aesthetic, safety, and comfort standards for guests.  Debtor has made repairs in the ordinary course of business during this Case to the extent authorized by its court-ordered operating budget and by U.S. Bank, N.A., as Trustee for the registered holders of COMM 2012-CCRE3 Commercial Mortgage Pass-Through Certificates, acting through Midland Loan Services, ("Midland"), which asserts a lien over all of Debtor's property, including rents and cash proceeds.

### B.   INSIDERS OF DEBTOR

The Equity Interests and officers of Debtor are insiders and have been identified as Ashish Thaker (30% member), Hemant Thaker (30% member), and Maruti Investment, LLC (40% member). At all times during the pendency of this case, Hemant Thaker has been the manager and person in control of the Debtor.

### C.   MANAGEMENT OF THE DEBTOR BEFORE AND DURING THE BANKRUPTCY

Hemant Thaker has been the Manager of the Debtor at all times since its inception, including during the pendency of this bankruptcy case.

4

### D.  EVENTS LEADING TO CHAPTER 11 FILING

The following items contributed to the decision by Debtor to seek protection under Chapter 11 of the Bankruptcy Code (hereinafter "the Code"):

On or about August 30, 2012, Cantor Commercial Real Estate Lending ("Cantor") loaned Debtor funds in the principal amount of $6,000,000.00, pursuant to a promissory note, loan agreement, deed to secure debt, security deed, and assignment of leases and fixture filing (collectively, the "Loan Documents").  At some point thereafter, Cantor assigned the Loan Documents to Midland.

Pursuant to the Loan Documents, Debtor was required to seek approval from Cantor/ Midland to enter into a new franchise agreement.  Moreover, allowing the existing franchise agreement to lapse without a replacement would constitute a default under the Loan Documents.

With its Holiday Inn Express franchise expiring in October of 2018, Debtor identified an opportunity to convert the Hotel to a Best Western Premier in December of 2017; however, the conversion required substantial renovation and upgrades to the hotel property.  Debtor sought approval from Midland.  Debtor contends that Midland encouraged Debtor to make the renovations and lead Debtor to believe that the new franchise would be approved, to wrongfully induce Debtor to invest in the substantial renovations to improve their collateral.  As a result, through capital infusions of Debtor's members and funding from Access Point Financial, Debtor spent nearly $3.2 million on the conversion of the hotel to the Best Western Premier.

On December 12, 2019, Midland filed a complaint in the Superior Court of Forsyth County, alleging Debtor had failed to obtain approval to change the franchise and seeking the appointment of a receiver.  On December 13, 2019, a receiver was appointed.  Debtor contends that Midland intentionally procured a default after inducing Debtor to improve the property.  Midland denies

5

wrongdoing.

In an agreement dated February 7, 2020, Debtor and Midland reinstated and modified the Loan Documents the loan, and the receivership action was dismissed. However, in the spring of 2020, the COVID-19 pandemic devastated the hospitality industry as both business and holiday travel was reduced to a fraction of normal business operations. As a result, Debtor was unable to maintain debt service and Midland once again declared a default and scheduled a foreclosure sale to be held September 1, 2020.

These factors resulted in Debtor seeking protection under Chapter 11 of the Bankruptcy Code on August 31, 2020. (The Bankruptcy Code, 11 U.S.C. §101 et seq. is referred to herein simply as "the Code.")

### E.  SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE

1. Early Motions

Shortly after the Case was filed, a number of motions were filed which required expedited hearings with the Court. These included

i.      Midland Loan Services' Motion for Expedited Relief from the Automatic Stay to Sell Property [Doc. 12];

ii.     Midland Loan Services' Motion to Prohibit Use of Cash Collateral [Doc. 14];

iii.    Debtor's Motion to Authorize Interim and Final Use of Cash Collateral and Request for Expedited Preliminary Hearing [Doc. 17];

iv.     Motion for Entry of Order Determining Adequate Assurance of Payment for Future Utility Services [Doc. 18].

As a result of these motions, the Court held an emergency hearing on September 17, 2020, and conducted an evidentiary hearing on October 15, 2020. The Court granted Debtor interim authority

to use cash collateral [Doc. 30, 41, 55] and denied Midland's motion for relief from the automatic stay [Doc. 83.]

2.  Professionals Approved by the Court

Debtor applied to hire the law firm of Schreeder, Wheeler & Flint, LLP. as Counsel in this Chapter 11 Case [Doc No. 35]. The Court approved this application on October 6, 2020 [Doc No. 38].

Schreeder, Wheeler & Flint, LLP submitted its First Interim Application for Compensation and Reimbursement of Expenses [Doc. 104] on February 1, 2021, which was approved by the Court for fees in the amount of $59,397.50 and reimbursement of expenses of $1,889.22 [Doc. No. 115]. Schreeder, Wheeler & Flint, LLP intends to submit its *Final Application for Compensation and Expenses* at or around the time of hearing on confirmation of the Plan. Fees will be subject to approval by the Court upon Applications.

3.  Claims

A Notice of Deadline for Filing Proofs of Claim [Doc. 95] set March 8, 2021 as the deadline for creditors to file claims in this case.

Debtor objected to the claim filed by Midland, Claim No. 5, on November 25, 2020. [Doc. No. 81]. Midland filed a response to that claim objection [Doc. 101].  By request of Midland, the claim objection has not yet been set for a hearing, because Midland and its counsel are uncomfortable traveling during the COVID-19 pandemic.

Debtor reserves the right to object to other claims as appropriate.

**F.  PROJECTED RECOVERY OF AVOIDABLE TRANSFERS**

Debtor examined payments made within 90 days of the Petition Date, and payments to insiders within 12 months of the Petition Date. Debtor's Counsel observed that there were no large

7

transfers in the records, and concluded that the net amount for recovery to be insignificant, given the partial or complete defenses and the litigation costs associated with an adversary proceeding. The limitation of avoiding powers is two years from the entry of the order for relief, which expires August 31, 2022.  Debtor does not anticipate substantial recovery for any avoidance actions.

### G.   CURRENT AND HISTORICAL FINANCIAL CONDITIONS

In the years preceding the commencement of this Case, the Hotel generated revenue of $1,985,422 in 2018, $781.596 in 2019, and $629.616 in January through August of 2020.

During the first 7 months after this Case was commenced, Debtor reported total receipts of $869,904.28 and total distributions of $679,657.45 in the Monthly Operating Reports filed with the Court [Doc. 132].

The full Monthly Operating Reports showing revenue and expenses during the pendency of this Case are available through PACER or may be obtained by making a written request to the counsel for Debtor: John A. Christy, Schreeder, Wheeler & Flint, LLP, 1100 Peachtree Street NE, Suite 800, Atlanta, Georgia 30309, or via email to jchristy@swfllp.com.

### III.   SUMMARY OF THE PLAN OF REORGANIZATION AND

### A.   WHAT IS THE PURPOSE OF THE PLAN OF REORGANIZATION?

The primary purpose of the Plan of Reorganization is to state the manner and the amounts that allowed claims will be paid, and also to clarify the effect that confirmation of a Plan will have on creditors and on the Reorganized Debtor. As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The claims grouped in a specific class must be substantially similar to each other. The Plan also states whether each class of claims or equity interests is impaired or unimpaired.[1] Only claims which are

---

[1] The terms "impaired" and "unimpaired" are defined in the Plan, Article II.

impaired under the Plan may vote on the Plan. If the Plan is confirmed, your recovery will be governed to the amount and payment terms as provided by the Plan.

### B.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired ("unimpaired"), and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.

There are two classes of secured creditors; Class A secured creditors being secured by the Hotel, fixtures and accounts, and Class B secured creditors having secured purchase money security interests in personalty such as furniture, fixtures, and equipment.

There are two classes of general unsecured creditors: Class C is the allowed claim of Debtor's franchisor, Best Western International, Inc., and Class D will consist of general unsecured claimants. The Plan provides for full payment of the allowed amount of Class C and Class D claims over time. Debtor contends that the separate classification of Class C and Class D is reasonable and necessary because Debtor's franchise flag with Best Western International, Inc. is essential to the ongoing viability of the Debtor's business.

The amount and classification of such claims may differ based upon timely filed amendments or timely filed objections to the claims

There is one class of Equity Interests, those being the members of Neelkanth Hotels, LLC. Equity interests will be permitted to retain their equity interest, but will be prohibited from receiving any distributions until all claimants have been paid the amounts required by the express terms of the Plan.

9

1.  **UNCLASSIFIED CLAIMS**

(a)      Administrative expense claims and priority tax claims are not in classes, pursuant to Section 1123(a)(1) of the Code. Administrative expenses are costs or expenses of administering Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.

(b)      **Holders of administrative claims must file their claims within 60 days after the Effective Date**, and the Reorganized Debtor will provide notice to all creditors within seven days from the entry of a final Order confirming this Plan of the deadline for filing administrative claims, and promptly thereafter file a certificate of service with the Court.

(c)      Debtor will pay all known and liquidated administrative claims on the Effective Date of the Plan, as required by the Bankruptcy Code, unless a particular claimant agrees to a different treatment. Any administrative claims filed or allowed after the Effective Date will be paid within thirty days of allowance and fixing of such claims by the Court.

(d)      Priority Tax claims, under Section 507(a)(8) of the Code, will be paid in the manner and amount provided in Section 1129(a)(9)(C) of the Code. The only timely filed priority tax claim is that of the Internal Revenue Service in the amount of $20,762.00 [Claim No. 2].

(d)      United States Trustees fees under 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owing on the Effective Date will be paid on the Effective Date.

**Administrative Expenses are unimpaired.**

2.  **CLAIMS PLACED IN CLASSES**

**Class A:** Allowed Secured claims of Midland. *The Class A Claimant is impaired.*

**Class B**: Allowed Secured Claim of Access Point Financial and Turn-key Hospitality Solutions, Inc. *Class B Claimants are Impaired.*

**Class C:** Allowed pre-petition claims of franchisor Best Western International, Inc. *The Class C Claimant is Impaired*.

**Class D:** Allowed Unsecured Claims. *Class D Claimants are Impaired.*

**Class E:** Equity Interests. *Class E Claimants are Impaired.*

3.        SUMMARY OF TREATMENT OF CLASSES IN THE PLAN

**Class A**: ***Allowed Secured Claims of Midland***. Class A is comprised of the prepetition secured claim of Midland, as may be allowed by order of the Court.[2]  Midland holds a secured debt in the original principal amount of $6,000,000, by virtue of a Promissory Note dated August 30, 2012, with a maturity date of September 6, 2022.  The debt is secured by, *inter alia*, a first priority security deed on Debtor's real property and rents and proceeds therefrom.

The Maturity Date of the Loan Documents will be extended to September 6, 2024.  Midland will be paid monthly payments of $30,216, which will be applied first to interest accruing that month at the contract rate of 5.195% and then to principal.  The payments will be made until the earlier of (1) the debt outstanding to Midland is fully paid, including by early payment, or (2) September 6, 2024, at which time a balloon payment of the entire amount of outstanding principal and interest shall be due.

The Class A Claimant will retain all lien rights to the Reorganized Debtor's property in the same priority, and to the same extent and validity, as those lien rights existed on the Petition Date.

**Class B: *Allowed Secured Claims***. Class B shall consist of allowed secured claims other than any allowed claim of Midland.  Commencing on the Effective Date, Debtor shall contribute $5,701.17 per month to be paid to Class B claimants on a pro rata basis, until the principal amount

---

[2] Debtor has filed an objection to Midland's proof of claim, which remains pending.

of such claims are paid in full.  Class B Claimants will retain all lien rights to the Reorganized Debtor's property in the same priority, and to the same extent and validity, as those lien rights existed on the Petition Date.

**Class C:** ***Allowed claim of Best Western International, Inc. for the cure of pre-petition franchise.***

Class C shall consist of the allowed claim of Best Western International, Inc. Commencing on the Effective Date, Debtor shall pay $3,541  per month to Best Western International, Inc. until its allowed claim is paid in full.

**Class D:** ***General Unsecured Claims***. Commencing after full payment of Class C claims and until August 2025, Debtor shall make monthly payments of $3,541 per month into a Plan Funding Pool.  Not less than every 180 days thereafter, Debtor shall make pro rata distributions from the Plan Funding Pool to holders of Class D Claims, until such allowed claims are paid in full.

**Class E:** ***Equity Interests.*** The Equity Interests in the corporate debtor are its members: Ashish Thaker (30% member), Hemant Thaker (30% member), and Maruti Investment, LLC (40% member).. Equity Interests will retain their respective interests, but will be prohibited from taking any distributions from the Reorganized Debtor until such time as all of the other administrative, priority, and unsecured claims in this Plan have been paid in the amounts and manner provided in the Plan.  Further, Equity Interests have agreed and will guarantee payment of the payments proposed under the Plan.

**In exchange for their guaranty of plan payments, holders of Equity Interests are seeking and, if the Plan is confirmed, shall obtain and be granted an injunction to prohibit any action of any type by any person or entity to hold them personally liable for any claims related to the Debtor, including specifically claims pursuant to any guaranties of Debtor's debt obligations, which arose prior to confirmation of the plan.**

### 4. DEFINITIONS

The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Disclosure Statement and Plan as hereinafter defined. These definitions are supplemented by the definitions contained in Debtor's Plan.

### 5. ALLOWANCE AND DISALLOWANCE OF CLAIMS

**a. Disputed Claims**. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either (i) a proof of claim has been filed or deemed filed, and Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and Debtor has scheduled such claim as disputed, contingent, or unliquidated

**b. Payment of Disputed Claims**. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Debtor may settle and compromise a disputed claim with Court approval pursuant to Bankruptcy Rule 9019.

**c. Reserve for Disputed Claims**. If there are any claims for which an objection has been filed on or before the Effective Date and which have not been resolved by the withdrawal of such objection or by the entry of an order determining the validity and amount of such claim, the Reorganized Debtor will establish a reserve fund to pay such claims in the manner and amount of their classification in this Plan if subsequently allowed by order of the Court.

**d. Payment of Resolved Claims**. If a claim is not paid according to the terms of the class within which such claim is classified as a result of a pending objection to such claim and the claim is later deemed to be an allowed claim by a final order of the Court, Debtor will pay the holder of such claim the payments which would have otherwise come due under the Plan within 30 days after the entry of a final order allowing such claim.

**e. Amendments to Claims**. A claim may not be amended later than the Effective Date,

13

except for amendments to Proofs of Claim to decrease the amount or the priority thereof.

### C.  PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**1. Assumption of Unexpired Leases and Executory Contracts**. Debtor currently has executory contracts or unexpired leases with Booking.com, Sanyln & Associates, Jacaruso Enterprises, and Best Western International, Inc.  These leases and executory contract will be assumed upon the entry of a final order confirming this Plan.

**2. Rejection of Unexpired Leases and Executory Contracts**

Except as described in the preceding paragraph C1, no other unexpired leases or executory contracts are known.   To the extent there are other unexpired leases or executory contracts, such unexpired leases or executory contracts will be deemed rejected by the entry of a final order confirming the Plan.

### IV.  MEANS OF IMPLEMENTING THE PLAN

### A.  FUNDING PLAN AND REORGANIZED DEBTOR MANAGEMENT.

The Plan will be funded from (1) funds accrued during this Chapter 11 Case (2) future income derived from the Hotel, or (3) the guarantees of Equity Interests described above.

Debtor has prepared a projected budget itemizing the anticipated income and expenses moving forward, including proposed plan payments.  *See* **Exhibit A** and Definitions in the Plan.

Post confirmation management of the Reorganized Debtor will remain with the officers and members of the Reorganized Debtor identified hereinabove; provided, however, that no members or officers will receive any compensation for such roles, whether as salary, wages, or distributions, until such time as all of the other administrative, priority, and unsecured claims in this Plan have been paid in the amounts and manner provided in this Plan.

A detailed description of the funding is found in the section entitled "Feasibility" below.

14

**B.   RISK FACTORS**. There is always a level of risk associated with a Plan of Reorganization. However, Debtor has managed to operate profitably during the COVID-19 Pandemic, which is known to be a time where hotels, restaurants and service industries have suffered dramatic losses. It is anticipated that both occupancy and revenue per room will rise after the COVID-19 Pandemic has been controlled, while many of Debtor's expenses are fixed and will not increase as significantly.

**C.     TAX CONSEQUENCES OF PLAN**

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys and/or Advisors**.

Plan payments may be considered as income by the Internal Revenue Service and, if so, subject to payment of income taxes.

**IV.    FEASIBILITY OF PLAN**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor, unless such liquidation or reorganization is proposed in the Plan. The funding of the Plan will be from funds accrued during the pendency of this Case, from post-confirmation income, and from contributions from Equity Interests to the extent necessary.

Debtor has submitted a budget showing the anticipated income and expenses for the period June 2021 through December 2025.. *See:* **EXHIBIT A.**. Income projections are based upon Debtor's historical operations, with adjustments made for the increases in revenue per room which are anticipated to occur as COVID-19 vaccinations increase and business and leisure travel returns to pre-pandemic levels.

During the past 12 months, the Hotel has operated with the restrictions and negative impact

15

on travel resulting from the COVID- 19 Pandemic. Yet, during the same period, Debtor has managed to show a small positive cash flow in spite of the Pandemic. COVID-19 immunizations are now being produced and widely distributed, and recent projections from the White House and from medical experts suggest that everyone desiring the COVID-19 shots will have access to them by the summer of 2021. A resurgent economy is widely predicted, which will greatly benefit the hospitality and hotel industry. It is highly unlikely that revenues at the Hotel will decrease in the foreseeable future, and highly likely that revenue in the next few years will exceed revenue for the past twelve months.

The attached budget includes all of the ordinary costs associated with operating the Hotel. *See:* **EXHIBIT A**. The attached budget also includes line items for payment to creditors under the proposed Plan of Reorganization, and has allocated funding to make ordinary repairs and for implementation of the Property Improvement Plan.

## V.    CONFIRMATION REQUIREMENT AND PROCEDURES

### A.    GENERAL REQUIREMENTS FOR CONFIRMATION

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code. These include the requirements that the Plan must be proposed in good faith; that at least one impaired class of claims must accept the plan, without counting votes of insiders; that the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and that the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in §§1129 and they are not the only requirements for confirmation.

Debtor is soliciting acceptance of the Plan by all Impaired Classes of Claim under the Plan. The Plan can be confirmed by the Court if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each impaired class of claims voting on the Plan, and if it

is accepted by the holders of two-thirds in amount of interests in each impaired class of equity interests voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that it accords fair and equitable treatment to the class or classes, provided that the Plan will pay in full superior classes of creditors before inferior classes receive any distribution or retain interests. If the superior classes consent to less than full payment, the Plan may be confirmed even if inferior classes receive distributions or retain interests.

### B.    LIQUIDATION ANALYSIS

To confirm the Plan, the Court must find that all classes of impaired claims have (1) accepted the plan, or (2) will receive value, as of the effective date of the Plan, that is not less than they would receive if Debtor were to be liquidated under Chapter 7 on as such date. For the reasons stated below, Debtor represents that the Plan complies with this requirement.

The most recent appraisal of the Debtor's assets is the appraisal of Midland's expert appraiser, who has provided testimony of his opinions in this case.  The appraiser offered three value opinions: (1) a "quick sale" value of $3.65 million, including $3.125 million for real property and $525,000 for personal property, (2) an "as-is" value as of July 31, 2020, of $6.1 million, broken down as $5.225 million for real property and $875,000 for personal property, and (3) a "stabilized" value of $7.175 million by July 2022, broken down as $6.55 million for real estate and $625,000 for personal property.

Debtor contends, in a Chapter 7 liquidation, the appraiser's "quick sale" valuation represents the most likely liquidation sale price which might be realized.  However, even using the appraiser's "as-is" valuation of $6.1 million, creditors would receive more through the Plan than they would in a Chapter 7 liquidation.

Accounting, conservatively, for 10% costs of sale and administration of the Chapter 7 estate[3], and using the appraiser's "stabilized" valuation, the Chapter 7 estate might realize $5,490,000, including $4,702,500 for real estate and $787,500 for personal property.

Midland has asserted a claim in this case of $6,211,853.17, secured by all of Debtor's real and personal property. Although Debtor has objected to Midland's claim and contends that it is overstated, the eventual allowed claim in this case would likely consume all, or substantially all, of the realizable value of Debtor's real property.

APF-CPX 1, LLC has asserted a claim in the amount of $1,249,183.45, secured by Debtor's furniture, fixtures and equipment. This claim would consume all value from Debtor's personal property.

Even if a Chapter 7 Trustee was able to realize greater value from the Debtor's assets than as set forth above, other secured claims in the amount of $118,839.00 have been filed, which would be paid from those proceeds prior to payment of administrative claims or general unsecured claims.

In a Chapter 7 liquidation, Debtor's estate would be unlikely to realize enough to pay administrative expenses, much less to realize a distribution to unsecured creditors. By comparison, the Plan proposes to pay a distribution to allowed unsecured claims. Accordingly, the Plan would pay creditors in a greater amount than they would receive in a Chapter 7 liquidation.

### C. ABSOLUTE PRIORITY RULE

Confirmation of Chapter 11 plans is guided by a concept referred to in bankruptcy as the "absolute priority rule". Simply stated, the absolute priority rule prevents holders of equity interests

---

[3] Liquidation of the Debtor's assets would incur costs of sale, including broker fees and closing costs, as well as statutory fees for a Chapter 7 Trustee, including over 5% of the first $1,000,000 collected and 3% of the amounts collected in excess of $1,000,000. The trustee would also likely incur additional administrative expenses, including attorneys' fees and accounting fees.

18

from retaining property interests under the Plan (1) unless dissenting impaired unsecured creditors classes are paid in full or (2) unless equity interests make a "fresh contribution" to the insolvent enterprise. [See: *In re Lett*, 632 F.3d 1216 (11th Cir. 2011) for a discussion of the absolute priority rule].

If all impaired unsecured creditor classes vote for the Plan, the Absolute Priority Rule is not a factor. If any class of impaired unsecured creditor classes fails to vote in favor of the Plan, then the absolute priority rule becomes a factor, and equity interests may not retain their equity unless they made a "fresh contribution" of value to the reorganized debtor that is: (1) new; (2) substantial; (3) money or money's worth; (4) necessary for a successful reorganization; and (5) reasonably equivalent to the value or interest received. *See: In re Farwest Pump Co*., 2020 Bankr. LEXIS 2457, 2020 WL 5588808 (9th Cir. BAP 2020).

Debtor submits that the contributions of Equity Interest set forth in Section III.B.3 above satisfies the absolute priority rule.  The proposed contributions provide new value to the Debtor's estate which is substantial.  The contributed funds are also necessary for a successful reorganization, in that they allow the Debtor, whose business substantially fluctuates seasonally, to propose stable monthly payments under the Plan.  Further, Debtor submits that the contributions represent greater than reasonably equivalent value for an interest in the Debtor because, as shown in Section V.B, Debtor's assets are unlikely to have any value over and above the claims of secured creditors in the event of liquidation.

These requirements are the basic requirements needed for the confirmation of a Plan but are not the only requirements listed in §1129, and are not the only requirements for confirmation.

### D.   THE CONFIRMATION HEARING

The Bankruptcy Code requires the Court, after notice, to hold a hearing on confirmation of

the Plan, at which time any party in interest may object to confirmation. Objections to confirmation must be made in writing and filed with the Bankruptcy Court and must be served on counsel for Debtor before the date scheduled by the Court for the confirmation hearing.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

The Plan can be confirmed by the Court only if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each impaired class of claims voting on the Plan, or if each impaired class of claims will receive or retain under the Plan property of a value that is not less than they would receive or retain if Debtor were liquidated under Chapter 7.

### E. WHO MAY VOTE OR OBJECT TO CONFIRMATION

As stated above, any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired. As required by the Bankruptcy Code, Debtor is soliciting acceptance of the Plan by Impaired Classes of Claims under the Plan.

In this case, Debtor believes that Classes A, B, C, D, E and F are impaired and that holders of claims in each of these classes are entitled to vote to accept or reject the Plan

### 1. What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) Debtor has scheduled the claim or equity on Debtor's schedules, unless the claim or equity has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest and no objection has been filed and is pending.

20

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure. **The deadline for filing a proof of claim in this case was March 8, 2021 [Doc. No. 95].**

### 2.    What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### F.    WHO IS *NOT* ENTITLED TO VOTE

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.**

### G.    VOTES NECESSARY TO CONFIRM THE PLAN

21

When impaired classes exist, the Court can confirm the Plan if (1) at least one impaired class of creditors has accepted the Plan without counting the votes of insiders within that class and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed in paragraph 2, below.

### 1. *Votes Necessary for a Class to Accept a Plan*

A class of claims accepts a Plan if both the following occur: (1) the holders of ***more than one-half (1/2)*** of the ***allowed*** claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at ***least two-thirds (2/3) in dollar amount*** of the ***allowed*** claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at ***least two-thirds (2/3) in amount*** of the ***allowed*** equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Non-Accepting Classes*

Even if one or more of the impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by §1129(b) of the Bankruptcy Code. A plan that binds non-accepting classes is commonly referred to as a "cram down "plan. The Bankruptcy Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on the general rule are numerous and complex.**

## VI.   EFFECT OF CONFIRMATION OF PLAN

**A.     DISCHARGE OF THE DEBTOR**. Confirmation of the Plan also discharges Debtor

from any debt that arose before the date of confirmation to the extent specified in §1141(d)(1)(A) of the Bankruptcy Code, except as provided in the Plan or under applicable bankruptcy law. However, Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in §1141(d)(6)(B). After the Effective Date of the Plan claims against Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

**Such injunction shall extend to the successors of Debtor and, in exchange for guaranty of plan payments, shall further prohibit any person from taking any action of any type in an attempt to hold Ashish Thaker, Hemant Thaker, and/or Maruti Investment, LLC liable for any debt related to the Debtor, including the enforcement of guarantees, which arose prior to the Confirmation Date.  Except as otherwise expressly provided for in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all persons or entities who have held, hold, or may hold claims against Debtor are temporarily enjoined from proceeding against any person or entity that guarantees any obligation of the Debtor, their successors, or their property, for the collection of all or any portion of their claim, said injunction to remain in effect only for so long as Debtor complies with the terms of the Plan.  Any violation of the Plan that remains uncured for thirty (30) days after notice as provided herein, from any party affected by such violation shall automatically and without further order of the Bankruptcy Court result in the dissolution of the injunction granted hereunder as to said affected party.**

      B.    **REVESTING PROPERTY OF THE ESTATE**. Confirmation of the Plan vests all property of the estate in the Reorganized Debtor free and clear of claims and interests of creditors and equity security holders, unless otherwise provided in the Plan.

      C.    **PRESERVATION OF CAUSES OF ACTION**. The Reorganized Debtor may retain

and may, but is not required to, enforce all Retained Actions in accordance with §1123(b)(3) of the Code. After the Effective Date, the Reorganized Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions, or decline to do any of the foregoing, without further approval of the Bankruptcy Court. The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtor will retain the right to pursue all such claims, rights of action, suits, proceedings and other Retained Actions in its sole discretion. Debtor specifically reserves any cause of action against any account debtors related to underpayment or non-payment of any fees or other monies due. No preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, judicial estoppel, equitable estoppel, or laches will apply to any such claim, right of action, suite, proceeding, or other Retained Actions upon the he confirmation or consummation of this Plan.

## VII.    DEFAULT PROVISIONS

A.    **GENERAL DEFAULT PROVISIONS**: In the event that Debtor defaults under the provisions of the Plan, any creditor or party-in-interest desiring to assert such a default shall provide Debtor with written notice of the alleged default. Debtor shall have 30 days from the receipt of the written notice in which to cure the default. Such notice shall be delivered by certified mail, return receipt requested, to the attorneys for Debtor at the address stated on the final page hereof. If the default is not cured, any creditor or party-in-interest may thereafter file and serve upon counsel of Debtor a motion to compel compliance with applicable provisions of the Plan. The Court, upon finding of a material default, shall issue such orders compelling compliance with the pertinent provisions of the Plan or other such relief as determined by the Court.

24

**B.  DEFAULT PROVISIONS FOR TAXES**: The Reorganized Debtor is required to timely file all state and federal tax returns, and timely make all tax deposits and payments during the life of the Plan. Failure to adhere to any of the above requirements will be considered an event of default. Should an event of default occur, the taxing authority alleging default shall provide Debtor with written notice of any default under the Plan. If Debtor fails to cure any default within fifteen (15) calendar days following receipt of written notice of such default, then the entire tax debt still owed to the taxing authority shall become due and payable immediately, and the taxing may collect these unpaid tax liabilities through the administrative collection provisions of the Internal Revenue Code or state law.

**C.**  Any notice to be given or other written matter to be delivered pursuant to the Plan shall be given by first class United States Mail AND by either (1) certified mail, return receipt requested, or (2) statutory overnight delivery.  Notice given shall be deemed received five (5) business days after placing such notice or written matter in the United States mail properly addressed to Debtor at the address listed below:

Neelkanth Hotels, LLC
5400 Laurel Springs Parkway, Suite 105
Suwanee, Georgia 30024

AND with a copy to:

John A. Christy, Esq.
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street NE, Suite 800
Atlanta, Georgia 30309

**VIII.  GENERAL PROVISIONS**

**A.  FURTHER ACTIONS**

Pursuant to the Bankruptcy Code §1142(b), the Order of Confirmation shall operate as an order of the Court directing Debtor and any other necessary parties to execute and deliver or join in

the execution and delivery of any instrument required to perform any act that is necessary for the consummation of this Plan.

### B.   CAPTIONS

Section captions used in the Plan are for convenience only, and shall not affect the construction of the Plan.

### C.   BAR DATES FOR CLAIMS

**(1)    <u>Pre-petition claims</u>:** The Court previously set a bar date of March 8, 2021 for creditors to file proofs of claim or interest for pre-petition claims [Doc. No. 95]. Any claim not timely filed will be disallowed, unless otherwise allowed pursuant to an order from this Court expressly allowing such late filed claim(s).

**(2)    <u>Administrative Expenses</u>:** Upon confirmation of this Plan, **any creditor or party-in-interest who may have a claim for an administrative expense pursuant to §503 of the Bankruptcy Code shall file an application with the court within 60 days from the Effective Date of the Plan** to determine whether such administrative expense shall be allowed in this case. Any creditor or party-in-interest who fails to timely apply to the court for allowance of an administrative expense shall be barred from later submitting such claim and from receiving distributions for the payment of such claim under this Plan.

### D.   DISPUTED, UNLIQUIDATED AND CONTINGENT CLAIMS

Notwithstanding any other term or condition of this Plan, disputed, unliquidated and contingent Claims shall be paid only upon allowance in accordance with the provisions of §502 of the Bankruptcy Code.

### E.   JURISDICTION OF THE BANKRUPTCY COURT

After the entry of the Order of Confirmation, the Court will retain jurisdiction only for the following purposes:

(1)    To determine the classification and priority of all Claims against or Interests in Debtor and to re-examine any Claims which may have been allowed. The failure by any party-in-interest, initially, to object to or examine any Claims shall not be deemed to be a waiver of any party-in-interest's right to object to, or cause to be re-examined any such Claim, in whole or in part.

(2)    To determine applications for the rejection or assumption of executory contracts or unexpired leases pursuant to the provisions of this Plan which are not determined prior to the Confirmation Date and to determine allowance of Claims for damages with respect to rejection of any such executory contracts or unexpired leases within such time as the Court may direct.

(3)    To oversee and issue further appropriate orders respecting disbursement of amounts deposited as may be required by this Plan.

(4)    To conduct hearings on valuation, as necessary, and to determine whether any party- interest is entitled to recover against any Person any Claim, whether arising under

§506(c) of the Bankruptcy Code, or otherwise.

(5)    To hear and determine all applications for compensation and other Administrative Expenses.

(6)    To hear and determine any and all pending adversary proceedings or contested matters.

(7)    To determine all causes of action which may exist in favor of Debtor and/or any of its creditors.

(8)    To determine any modification of the Plan after confirmation pursuant to §1127 of the Bankruptcy Code.

(9)    To determine all matters and controversies and disputes arising under or in connection with the Plan on the application, disposition or distribution of the Estate Property.

(10)    To enter any order, including injunctions, necessary to establish and enforce the rights

and powers of Debtor and/or any of its creditors under the confirmed Plan.

(11)    To enter a final decree pursuant to Rule 3022 of the Bankruptcy Rules.

### F.  MODIFICATION OF THE PLAN

Debtor may amend or modify this Plan at any time prior to the entry of the Order of Confirmation, pursuant to §1127(a) of the Bankruptcy Code. After the entry of the Order of Confirmation, Debtor may, pursuant to §1127(b) and (c) of the Bankruptcy Code and with approval of the Court, modify and amend the Plan in a manner which does not materially or adversely affect the interests of Persons affected by the plan without having to solicit acceptances of such modification, and may take such steps as are necessary to carry out the purpose and effect of the Plan as modified.

### G.  CLOSING THE CASE

Upon substantial consummation of this Plan, Debtor will move this Court to enter an order closing this Case. Upon the entry of such order, the Case shall be closed. Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

### H. UNACCEPTED PAYMENTS

Unless Debtor and a claimant otherwise agree to a different method of payment, Debtor may make payments required under the Plan to the addresses stated in a creditor's applicable proof of claim or, if no proof of claim has been filed, to the address listed in Debtor's schedules.  Debtor may cancel any checks which remain outstanding more than 60 days from the date such payments are sent, and such payments shall be deemed paid.

## IX.    CONCLUSION

Debtor believes that the Disclosures contained herein provide adequate information for creditors to make an informed judgment concerning Debtor's Plan of Reorganization, and to conclude that Debtor's Plan provides a meaningful vehicle for payment of allowed claims in this Case. Debtor urges all claimants to vote for the acceptance of this Plan of Reorganization.

This 28th day of April, 2021.

_____
NEELKANTH HOTELS, LLC
By: Hemant Thaker, Manager

_/s/ John A. Christy_____
JOHN A. CHRISTY
Georgia Bar No. 125518
JONATHAN A. AKINS
Georgia Bar No. 472453
Attorney for Debtor-in-Possession

SCHREEDER, WHEELER & FLINT, LLP
jchristy@swfllp.com
1100 Peachtree Street, NE, Suite 800
Atlanta, Georgia 30309-4516
Telephone: (404) 681-3450
Facsimile: (404) 681-1046

# EXHIBIT "A"

**Proposed Budget for 2021**

| | JUNE | JULY | AUGUST | SEPTEMBER | October | November | December |
|---|---|---|---|---|---|---|---|
| **SALES:** | | | | | | | |
| Room Revenue | 157,201 | 159,450 | 141,380 | 140,630 | 126,000 | 122,000 | 110,000 |
| Other Revenue | 4,000 | 4,000 | 5,000 | 4,000 | 4,000 | 4,000 | 5,000 |
| | | | | | | | |
| **Total Revenue** | **161,201** | **163,450** | **146,380** | **144,630** | **130,000** | **126,000** | **115,000** |
| Sales Tax Collected | 23,580 | 23,918 | 21,207 | 21,095 | 18,900 | 18,300 | 16,500 |
| Hotel Motel Tax | 7,700 | 7,800 | 7,200 | 7,100 | 5,370 | 5,100 | 4,580 |
| | | | | | | | |
| **Revenue Plus Tax Collected** | **192,481** | **195,168** | **174,787** | **172,825** | **154,270** | **149,400** | **136,080** |
| | | | | | | | |
| **EXPENSES:** | | | | | | | |
| Accounting Fees | 290 | 290 | 290 | 290 | 290 | 290 | 290 |
| Advertising Expense | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 |
| Auto Expense | 60 | 60 | 60 | 60 | 60 | 60 | 60 |
| Bank Charges | 80 | 80 | 80 | 80 | 80 | 80 | 80 |
| Breakfast Expense | 6,209 | 6,298 | 5,585 | 5,555 | 4,977 | 4,819 | 3,526 |
| Travel Agent Commission | 6,021 | 6,107 | 5,415 | 5,386 | 4,826 | 4,673 | 3,136 |
| Credit Card Commission | 3,458 | 3,508 | 3,110 | 3,094 | 2,772 | 2,684 | 2,420 |
| Elevators Contract | 715 | 715 | 715 | 715 | 715 | 715 | 715 |
| Guest Expense | 4,952 | 5,023 | 4,453 | 4,430 | 3,969 | 3,843 | 2,402 |
| Franchise Fees | 10,061 | 10,205 | 9,048 | 9,000 | 8,064 | 7,808 | 7,040 |
| Frequent Stay Cost Rewards Points | 1,886 | 1,913 | 1,697 | 1,688 | 1,512 | 1,464 | 1,096 |
| Landscape | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Laundry & Cleaning Supplies | 1,572 | 1,595 | 1,414 | 1,406 | 1,260 | 1,220 | 880 |
| License & Permit | 120 | 120 | 120 | 120 | 120 | 120 | 120 |
| Marketing Fees BestWestern | 1,572 | 1,595 | 1,414 | 1,406 | 1,260 | 1,220 | 940 |
| Petty Cash Expenses | 800 | 850 | 600 | 600 | 400 | 400 | 400 |
| Office Expense | 350 | 350 | 350 | 350 | 150 | 150 | 150 |
| Point Of Sale | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 |
| Postage | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Pool & Spa Expense | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Printing and Stationary | 450 | 450 | 400 | 400 | 200 | 200 | 200 |
| Repairs & Maintenance | 2,358 | 2,392 | 2,121 | 2,109 | 1,560 | 1,430 | 1,420 |
| Salaries  & Wages | 25,938 | 26,309 | 23,328 | 23,204 | 19,500 | 19,600 | 16,820 |
| Signs Contract | 385 | 385 | 385 | 385 | 385 | 385 | 385 |
| Supplies Expenses | 1,572 | 1,595 | 1,414 | 1,406 | 960 | 820 | 710 |
| Payroll Taxes | 2,044 | 2,073 | 1,838 | 1,828 | 1,638 | 1,586 | 1,430 |
| Terminal Maintenance | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 |
| Telephone & TV -Cable | 2,050 | 2,050 | 2,050 | 2,050 | 2,050 | 2,050 | 2,050 |
| Uniform Expense | 150 | 150 | 150 | 150 | - | - | - |
| Utilities Expense | 11,790 | 11,959 | 10,604 | 10,547 | 9,450 | 7,150 | 7,100 |
| U.S. Trustee Fees | - | 4,875 | | - | 4,875 | | |
| Property Taxes | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 12,000 |
| Insurance Expense | 2,817 | 2,817 | 2,817 | 2,817 | 2,817 | 2,817 | 2,817 |
| Sales Tax/City Tax | 23,580 | 23,918 | 21,207 | 21,095 | 18,900 | 18,300 | 16,500 |
| Hotel Motel Tax | 7,700 | 7,800 | 7,200 | 7,100 | 5,370 | 5,100 | 4,580 |
| | | | | | | | |
| **Total Expenses** | **138,005** | **144,504** | **126,887** | **126,296** | **117,184** | **108,008** | **94,791** |
| | | | | | | | |
| **Operating Income** | **54,476** | **50,664** | **47,900** | **46,529** | **37,086** | **41,392** | **41,289** |
| | | | | | | | |
| Class A Payment | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 |
| Class B Payment | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 |
| Class C/D Payment | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 |
| | | | | | | | |
| Net Income After Plan Payments | 15,018 | 11,206 | 8,442 | 7,071 | (2,372) | 1,934 | 1,831 |
| Projected Accrued Cash | 15,018 | 26,224 | 34,666 | 41,737 | 39,365 | 41,299 | 43,130 |

PROJECTIONS FOR 2022

| | January | February | March | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SALES: | | | | | | | | | | | | |
| Room Revenue | 127,000 | 128,000 | 134,000 | 164,000 | 165,000 | 167,000 | 169,000 | 151,000 | 150,000 | 128,000 | 124,000 | 110,000 |
| Other Revenue | 3,000 | 4,000 | 5,000 | 5,000 | 6,000 | 6,000 | 6,000 | 6,000 | 5,000 | 4,000 | 4,000 | 5,000 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Total Revenue | 130,000 | 132,000 | 139,000 | 169,000 | 171,000 | 173,000 | 175,000 | 157,000 | 155,000 | 132,000 | 128,000 | 115,000 |
| Sales Tax Collected | 19,050 | 19,200 | 20,100 | 24,600 | 24,750 | 25,050 | 25,350 | 22,650 | 22,500 | 19,200 | 18,600 | 16,500 |
| Hotel Motel Tax | 6,600 | 6,730 | 7,100 | 8,635 | 8,740 | 8,840 | 8,940 | 8,020 | 7,920 | 6,745 | 6,541 | 5,620 |
| | | | | | | | | | | | | |
| Revenue Plus Tax Collected | 155,650 | 157,930 | 166,200 | 202,235 | 204,490 | 206,890 | 209,290 | 187,670 | 185,420 | 157,945 | 153,141 | 137,120 |
| EXPENSES: | | | | | | | | | | | | |
| Accounting Fees | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 |
| Advertising Expense | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 |
| Auto Expense | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 |
| Bank Charges | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 |
| Breakfast Expense | 5,017 | 5,056 | 5,293 | 6,478 | 6,518 | 6,597 | 6,676 | 5,965 | 5,925 | 5,056 | 4,898 | 4,345 |
| Travel Agent Commission | 4,864 | 4,902 | 5,132 | 6,281 | 6,320 | 6,396 | 6,473 | 5,783 | 5,745 | 4,902 | 4,749 | 4,213 |
| Credit Card Commission | 2,794 | 2,816 | 2,948 | 3,608 | 3,630 | 3,674 | 3,718 | 3,322 | 3,300 | 2,816 | 2,728 | 2,420 |
| Elevators Contract | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 |
| Guest Expense | 4,001 | 4,032 | 4,221 | 5,166 | 5,198 | 5,264 | 5,324 | 4,757 | 4,725 | 4,032 | 3,906 | 3,080 |
| Franchise Fees | 8,128 | 8,192 | 8,576 | 10,496 | 10,560 | 10,688 | 10,816 | 9,664 | 9,600 | 8,192 | 7,936 | 7,040 |
| Frequent Stay Cost Rewards Points | 1,524 | 1,536 | 1,608 | 1,968 | 1,980 | 2,004 | 2,028 | 1,812 | 1,800 | 1,536 | 1,488 | 1,100 |
| Landscape | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Laundry & Cleaning Supplies | 1,270 | 1,280 | 1,340 | 1,640 | 1,650 | 1,670 | 1,690 | 1,510 | 1,500 | 1,280 | 1,240 | 950 |
| License & Permit | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |
| Marketing Fees BestWestern | 1,270 | 1,280 | 1,340 | 1,640 | 1,650 | 1,670 | 1,690 | 1,510 | 1,500 | 1,280 | 1,240 | 1,100 |
| Petty Cash Expenses | 350 | 450 | 550 | 750 | 750 | 800 | 850 | 600 | 600 | 550 | 450 | 350 |
| Office Expense | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 250 |
| Point Of Sale | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 |
| Postage | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Pool & Spa Expense | 300 | 150 | 150 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Printing and Stationary | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 150 |
| Repairs & Maintanence | 1,905 | 1,920 | 2,010 | 2,460 | 2,475 | 2,505 | 2,535 | 2,265 | 2,250 | 1,920 | 1,860 | 1,250 |
| Salaries  & Wages | 20,955 | 21,120 | 22,110 | 27,060 | 27,225 | 27,555 | 27,885 | 24,915 | 24,750 | 21,120 | 20,460 | 15,950 |
| Signs Contract | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 |
| Supplies Expenses | 1,270 | 1,280 | 1,340 | 1,640 | 1,650 | 1,670 | 1,690 | 1,510 | 1,500 | 1,280 | 1,240 | 850 |
| Payroll Taxes | 1,651 | 1,664 | 1,742 | 2,132 | 2,145 | 2,171 | 2,197 | 1,963 | 1,950 | 1,664 | 1,612 | 1,243 |
| Terminal Maintanence | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 |
| Telephone & TV -Cable | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| Uniform Expense | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Utilities Expense | 9,525 | 9,600 | 10,050 | 12,300 | 12,375 | 12,525 | 12,675 | 11,325 | 11,250 | 9,600 | 9,300 | 7,150 |
| U.S. Trustee Fees | | | | | | | | | | | | |
| Property Taxes | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Insurance Expense | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 |
| Sales Tax/City Tax | 18,900 | 19,200 | 20,100 | 24,600 | 24,750 | 25,050 | 25,350 | 22,650 | 22,500 | 19,200 | 18,450 | 15,750 |
| Hotel Motel Tax | 6,600 | 6,730 | 7,100 | 8,635 | 8,740 | 8,840 | 8,940 | 8,020 | 7,920 | 6,745 | 6,490 | 5,620 |
| | | | | | | | | | | | | |
| Total Expenses | 115,147 | 116,032 | 120,434 | 141,978 | 142,739 | 144,199 | 145,660 | 132,694 | 131,939 | 116,297 | 113,171 | 97,235 |
| | | | | | | | | | | | | |
| Net Operating Income | 40,503 | 41,898 | 45,766 | 60,257 | 61,752 | 62,691 | 63,630 | 54,976 | 53,481 | 41,648 | 39,970 | 39,885 |
| | | | | | | | | | | | | |
| Class A Payment | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 |
| Class B Payment | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 |
| Class C/D Payment | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 |
| | | | | | | | | | | | | |
| Net Income After Plan Payments | 1,045 | 2,440 | 6,308 | 20,799 | 22,294 | 23,233 | 24,172 | 15,518 | 14,023 | 2,190 | 512 | 427 |
| Projected Accrued Cash | 1,045 | 3,485 | 9,792 | 30,591 | 52,885 | 76,118 | 100,290 | 115,808 | 129,831 | 132,021 | 132,532 | 132,959 |

Projections for 2023

| | January | February | March | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SALES: | | | | | | | | | | | | |
| Room Revenue | 130,000.00 | 132,000.00 | 137,000.00 | 168,000.00 | 169,000.00 | 170,000.00 | 175,000.00 | 155,000.00 | 154,000.00 | 132,000.00 | 128,000.00 | 115,000.00 |
| Other Revenue | 3,000.00 | 4,000.00 | 5,000.00 | 5,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 5,000.00 | 4,000.00 | 4,000.00 | 5,000.00 |
| | | | | | | | | | | | | |
| Total Revenue | 133,000.00 | 136,000.00 | 142,000.00 | 173,000.00 | 175,000.00 | 176,000.00 | 181,000.00 | 161,000.00 | 159,000.00 | 136,000.00 | 132,000.00 | 120,000.00 |
| Sales Tax Collected | 19,500.00 | 19,800.00 | 20,550.00 | 25,200.00 | 25,350.00 | 25,500.00 | 26,250.00 | 23,250.00 | 23,100.00 | 19,800.00 | 19,200.00 | 17,250.00 |
| Hotel Motel Tax | 6,600.00 | 6,730.00 | 7,100.00 | 8,635.00 | 8,740.00 | 8,994.00 | 8,940.00 | 8,020.00 | 7,920.00 | 6,950.00 | 6,745.00 | 5,620.00 |
| | | | | | | | | | | | | |
| Revenue Plus Tax Collected | 159,100.00 | 162,530.00 | 169,650.00 | 206,835.00 | 209,090.00 | 210,494.00 | 216,190.00 | 192,270.00 | 190,020.00 | 162,750.00 | 157,945.00 | 142,870.00 |
| EXPENSES: | | | | | | | | | | | | |
| Accounting Fees | 290.00 | 290.00 | 290.00 | 290.00 | 290.00 | 290.00 | 290.00 | 290.00 | 290.00 | 290.00 | 290.00 | 290.00 |
| Advertising Expense | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 | 1,299.00 |
| Auto Expense | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 |
| Bank Charges | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 |
| Breakfast Expense | 5,135.00 | 5,214.00 | 5,412.00 | 6,636.00 | 6,676.00 | 6,715.00 | 6,913.00 | 6,123.00 | 6,083.00 | 5,214.00 | 5,056.00 | 4,543.00 |
| Travel Agent Commission | 4,979.00 | 5,056.00 | 5,247.00 | 6,434.00 | 6,473.00 | 6,511.00 | 6,703.00 | 5,937.00 | 5,898.00 | 5,056.00 | 4,902.00 | 4,405.00 |
| Credit Card Commission | 2,860.00 | 2,904.00 | 3,014.00 | 3,696.00 | 3,718.00 | 3,740.00 | 3,850.00 | 3,410.00 | 3,388.00 | 2,904.00 | 2,816.00 | 2,530.00 |
| Dues & Subscriptions | - | - | - | | | | | | | | | |
| Elevators Contract | 715.00 | 715.00 | 715.00 | 715.00 | 715.00 | 715.00 | 715.00 | 715.00 | 715.00 | 715.00 | 715.00 | 715.00 |
| Guest Expense | 4,095.00 | 4,158.00 | 4,316.00 | 5,292.00 | 5,324.00 | 5,355.00 | 5,513.00 | 4,883.00 | 4,851.00 | 4,158.00 | 4,032.00 | 3,220.00 |
| Franchise Fees | 8,320.00 | 8,448.00 | 8,768.00 | 10,752.00 | 10,816.00 | 10,880.00 | 11,200.00 | 9,920.00 | 9,856.00 | 8,448.00 | 8,192.00 | 7,360.00 |
| Frequent Stay Cost Rewards Points | 1,560.00 | 1,584.00 | 1,644.00 | 2,016.00 | 2,028.00 | 2,040.00 | 2,100.00 | 1,860.00 | 1,848.00 | 1,584.00 | 1,536.00 | 1,150.00 |
| Landscape | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 |
| Laundry & Cleaning Supplies | 1,300.00 | 1,320.00 | 1,370.00 | 1,680.00 | 1,690.00 | 1,700.00 | 1,750.00 | 1,550.00 | 1,540.00 | 1,320.00 | 1,280.00 | 950.00 |
| License & Permit | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 |
| Marketing Fees BestWestern | 1,300.00 | 1,320.00 | 1,370.00 | 1,680.00 | 1,690.00 | 1,700.00 | 1,750.00 | 1,550.00 | 1,540.00 | 1,320.00 | 1,280.00 | 1,150.00 |
| Petty Cash Expenses | 350.00 | 450.00 | 550.00 | 750.00 | 750.00 | 800.00 | 850.00 | 600.00 | 600.00 | 550.00 | 450.00 | 350.00 |
| Office Expense | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 250.00 |
| Point Of Sale | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 |
| Postage | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Pool & Spa Expense | 300.00 | 150.00 | 150.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Printing and Stationary | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 150.00 |
| Repairs & Maintanence | 1,950.00 | 1,980.00 | 2,055.00 | 2,520.00 | 2,535.00 | 2,550.00 | 2,625.00 | 2,325.00 | 2,310.00 | 1,980.00 | 1,920.00 | 1,350.00 |
| Salaries & Wages | 21,450.00 | 21,780.00 | 22,605.00 | 27,720.00 | 27,885.00 | 28,050.00 | 28,875.00 | 25,575.00 | 25,410.00 | 21,780.00 | 21,120.00 | 16,675.00 |
| Signs Contract | 385.00 | 385.00 | 385.00 | 385.00 | 385.00 | 385.00 | 385.00 | 385.00 | 385.00 | 385.00 | 385.00 | 385.00 |
| Supplies Expenses | 1,300.00 | 1,320.00 | 1,370.00 | 1,680.00 | 1,690.00 | 1,700.00 | 1,750.00 | 1,550.00 | 1,540.00 | 1,320.00 | 1,280.00 | 850.00 |
| Payroll Taxes | 1,690.00 | 1,716.00 | 1,781.00 | 2,184.00 | 2,197.00 | 2,210.00 | 2,275.00 | 2,015.00 | 2,002.00 | 1,716.00 | 1,664.00 | 1,300.00 |
| Terminal Maintanence | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 | 1,625.00 |
| Telephone & TV -Cable | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 |
| Uniform Expense | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Utilities Expense | 9,750.00 | 9,900.00 | 10,275.00 | 12,600.00 | 12,675.00 | 12,750.00 | 13,125.00 | 11,625.00 | 11,550.00 | 9,900.00 | 9,600.00 | 7,475.00 |
| U.S. Trustee Fees | | | | | | | | | | | | |
| Property Taxes | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| Insurance Expense | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 |
| Sales Tax/City Tax | 19,500.00 | 19,800.00 | 20,550.00 | 25,200.00 | 25,350.00 | 25,500.00 | 26,250.00 | 23,250.00 | 23,100.00 | 19,800.00 | 19,200.00 | 17,250.00 |
| Hotel Motel Tax | 6,600.00 | 6,730.00 | 7,100.00 | 8,635.00 | 8,740.00 | 8,840.00 | 8,940.00 | 8,020.00 | 7,920.00 | 6,950.00 | 6,490.00 | 5,620.00 |
| | | | | | | | | | | | | |
| Total Expenses | 117,263.00 | 118,654.00 | 122,400.00 | 144,599.00 | 145,360.00 | 146,165.00 | 149,592.00 | 135,316.00 | 134,560.00 | 118,919.00 | 115,942.00 | 100,901.00 |
| | | | | | | | | | | | | |
| Net Operating Income | 41,837.00 | 43,876.00 | 47,250.00 | 62,236.00 | 63,730.00 | 64,329.00 | 66,599.00 | 56,955.00 | 55,460.00 | 43,831.00 | 42,003.00 | 41,970.00 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Class A Payment | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 | 30,216.00 |
| Class B Payment | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 | 5,701.00 |
| Class C/D Payment | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 | 3,541.00 |
| | | | | | | | | | | | | |
| Net Income After Plan Payments | 2,379.00 | 4,418.00 | 7,792.00 | 22,778.00 | 24,272.00 | 24,871.00 | 27,141.00 | 17,497.00 | 16,002.00 | 4,373.00 | 2,545.00 | 2,512.00 |
| Projected Accrued Cash | 2,379.00 | 6,797.00 | 14,589.00 | 37,367.00 | 61,639.00 | 86,510.00 | 113,650.00 | 131,147.00 | 147,149.00 | 151,522.00 | 154,066.00 | 156,578.00 |

Projections for 2024

| | January | February | March | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SALES: | | | | | | | | | | | | |
| Room Revenue | 135,000 | 137,000 | 142,000 | 172,000 | 175,000 | 179,000 | 181,000 | 160,000 | 159,000 | 136,000 | 132,000 | 118,000 |
| Other Revenue | 3,000 | 4,000 | 5,000 | 5,000 | 6,000 | 6,000 | 6,000 | 6,000 | 5,000 | 4,000 | 4,000 | 5,000 |
| | | | | | | | | | | | | |
| Total Revenue | 138,000 | 141,000 | 147,000 | 177,000 | 181,000 | 185,000 | 187,000 | 166,000 | 164,000 | 140,000 | 136,000 | 123,000 |
| Sales Tax Collected | 20,250 | 20,550 | 21,300 | 25,800 | 26,250 | 26,850 | 27,150 | 24,000 | 23,850 | 20,400 | 19,800 | 17,700 |
| Hotel Motel Tax | 6,600 | 6,730 | 7,100 | 8,635 | 8,740 | 9,454 | 8,940 | 8,020 | 7,920 | 7,154 | 6,950 | 5,620 |
| | | | | | | | | | | | | |
| Revenue Plus Tax Collected | 164,850 | 168,280 | 175,400 | 211,435 | 215,990 | 221,304 | 223,090 | 198,020 | 195,770 | 167,554 | 162,750 | 146,320 |
| EXPENSES: | | | | | | | | | | | | |
| Accounting Fees | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 |
| Advertising Expense | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 |
| Auto Expense | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 |
| Bank Charges | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 |
| Breakfast Expense | 5,333 | 5,412 | 5,609 | 6,794 | 6,913 | 7,071 | 7,150 | 6,320 | 6,281 | 5,372 | 5,214 | 4,661 |
| Travel Agent Commission | 5,171 | 5,247 | 5,439 | 6,588 | 6,703 | 6,856 | 6,932 | 6,128 | 6,090 | 5,209 | 5,056 | 4,519 |
| Credit Card Commission | 2,970 | 3,014 | 3,124 | 3,784 | 3,850 | 3,938 | 3,982 | 3,520 | 3,498 | 2,992 | 2,904 | 2,596 |
| Elevators Contract | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 |
| Guest Expense | 4,253 | 4,316 | 4,473 | 5,418 | 5,513 | 5,639 | 5,702 | 5,040 | 5,009 | 4,284 | 4,158 | 3,304 |
| Franchise Fees | 8,640 | 8,768 | 9,088 | 11,008 | 11,200 | 11,456 | 11,584 | 10,240 | 10,176 | 8,704 | 8,448 | 7,552 |
| Frequent Stay Cost Rewards Points | 1,620 | 1,644 | 1,704 | 2,064 | 2,100 | 2,148 | 2,172 | 1,920 | 1,908 | 1,632 | 1,584 | 1,180 |
| Landscape | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Laundry & Cleaning Supplies | 1,350 | 1,370 | 1,420 | 1,720 | 1,750 | 1,790 | 1,810 | 1,600 | 1,590 | 1,360 | 1,320 | 950 |
| License & Permit | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |
| Marketing Fees BestWestern | 1,350 | 1,370 | 1,420 | 1,720 | 1,750 | 1,790 | 1,810 | 1,600 | 1,590 | 1,360 | 1,320 | 1,180 |
| Petty Cash Expenses | 350 | 450 | 550 | 750 | 750 | 800 | 850 | 600 | 600 | 550 | 450 | 350 |
| Office Expense | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 250 |
| Point Of Sale | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 |
| Postage | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Pool & Spa Expense | 300 | 150 | 150 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Printing and Stationary | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| Repairs & Maintenance | 2,025 | 2,055 | 2,130 | 2,580 | 2,625 | 2,685 | 2,715 | 2,400 | 2,385 | 2,040 | 1,980 | 1,250 |
| Salaries & Wages | 22,275 | 22,605 | 23,430 | 28,380 | 28,875 | 29,535 | 29,865 | 26,400 | 26,235 | 22,440 | 21,780 | 17,110 |
| Signs Contract | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 |
| Supplies Expenses | 1,350 | 1,370 | 1,420 | 1,720 | 1,750 | 1,790 | 1,810 | 1,600 | 1,590 | 1,360 | 1,320 | 850 |
| Payroll Taxes | 1,755 | 1,781 | 1,846 | 2,236 | 2,275 | 2,327 | 2,353 | 2,080 | 2,067 | 1,768 | 1,716 | 1,333 |
| Terminal Maintanence | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 |
| Telephone & TV -Cable | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| Uniform Expense | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Utilities Expense | 10,125 | 10,275 | 10,650 | 12,900 | 13,125 | 13,425 | 13,575 | 12,000 | 11,925 | 10,200 | 9,900 | 7,670 |
| U.S. Trustee Fees | | | | | | | | | | | | |
| Property Taxes | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Insurance Expense | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 |
| Sales Tax/City Tax | 20,250 | 20,550 | 21,300 | 25,800 | 26,250 | 26,850 | 27,150 | 24,000 | 23,850 | 20,400 | 19,800 | 17,700 |
| Hotel Motel Tax | 6,600 | 6,730 | 7,100 | 8,635 | 8,740 | 8,840 | 8,940 | 8,020 | 7,920 | 6,745 | 6,490 | 5,620 |
| | | | | | | | | | | | | |
| Total Expenses | 120,540 | 121,930 | 125,677 | 147,221 | 149,292 | 152,063 | 153,523 | 138,592 | 137,837 | 121,540 | 118,564 | 102,650 |
| | | | | | | | | | | | | |
| Net Operating Income | 44,311 | 46,350 | 49,723 | 64,214 | 66,699 | 69,241 | 69,567 | 59,428 | 57,933 | 46,014 | 44,186 | 43,670 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Class A Payment | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 |
| Class B Payment | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 |
| Class C/D Payment | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 |
| Net Income After Plan Payments | 8,394 | 10,433 | 13,806 | 28,297 | 30,782 | 33,324 | 33,650 | 23,511 | 22,016 | 10,097 | 8,269 | 7,753 |
| Projected Accrued Cash | 8,394 | 18,826 | 32,633 | 60,930 | 91,712 | 125,036 | 158,685 | 182,196 | 204,213 | 214,310 | 222,579 | 230,332 |

Projections for 2025

| | January | February | March | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SALES: | | | | | | | | | | | | |
| Room Revenue | 140,000 | 142,000 | 150,000 | 175,000 | 180,000 | 185,000 | 186,000 | 165,000 | 163,000 | 140,000 | 137,000 | 123,000 |
| Other Revenue | 3,000 | 4,000 | 5,000 | 5,000 | 6,000 | 6,000 | 6,000 | 6,000 | 5,000 | 4,000 | 4,000 | 5,000 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Total Revenue | 143,000 | 146,000 | 155,000 | 180,000 | 186,000 | 191,000 | 192,000 | 171,000 | 168,000 | 144,000 | 141,000 | 128,000 |
| Sales Tax Collected | 21,000 | 21,300 | 22,500 | 26,250 | 27,000 | 27,750 | 27,900 | 24,750 | 24,450 | 21,000 | 20,550 | 18,450 |
| Hotel Motel Tax | 6,600 | 6,730 | 7,100 | 8,635 | 8,740 | 9,760 | 8,940 | 8,020 | 7,920 | 7,358 | 7,205 | 5,620 |
| | | | | | | | | | | | | |
| Revenue Plus Tax Collected | 170,600 | 174,030 | 184,600 | 214,885 | 221,740 | 228,510 | 228,840 | 203,770 | 200,370 | 172,358 | 168,755 | 152,070 |
| EXPENSES: | | | | | | | | | | | | |
| Accounting Fees | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 |
| Advertising Expense | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 | 1,299 |
| Auto Expense | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 |
| Bank Charges | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 |
| Breakfast Expense | 5,530 | 5,609 | 5,925 | 6,913 | 7,110 | 7,308 | 7,347 | 6,518 | 6,439 | 5,530 | 5,412 | 4,859 |
| Travel Agent Commission | 5,362 | 5,439 | 5,745 | 6,703 | 6,894 | 7,086 | 7,124 | 6,320 | 6,243 | 5,362 | 5,247 | 4,711 |
| Credit Card Commission | 3,080 | 3,124 | 3,300 | 3,850 | 3,960 | 4,070 | 4,092 | 3,630 | 3,586 | 3,080 | 3,014 | 2,706 |
| Elevators Contract | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 | 715 |
| Guest Expense | 4,410 | 4,473 | 4,725 | 5,513 | 5,670 | 5,828 | 5,859 | 5,198 | 5,135 | 4,410 | 4,316 | 3,444 |
| Franchise Fees | 8,960 | 9,088 | 9,600 | 11,200 | 11,520 | 11,840 | 11,904 | 10,560 | 10,432 | 8,960 | 8,768 | 7,872 |
| Frequent Stay Cost Rewards Points | 1,680 | 1,704 | 1,800 | 2,100 | 2,160 | 2,220 | 2,232 | 1,980 | 1,956 | 1,680 | 1,644 | 1,230 |
| Landscape | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Laundry & Cleaning Supplies | 1,400 | 1,420 | 1,500 | 1,750 | 1,800 | 1,850 | 1,860 | 1,650 | 1,630 | 1,400 | 1,370 | 950 |
| License & Permit | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |
| Marketing Fees BestWestern | 1,400 | 1,420 | 1,500 | 1,750 | 1,800 | 1,850 | 1,860 | 1,650 | 1,630 | 1,400 | 1,370 | 1,230 |
| Petty Cash Expenses | 350 | 450 | 550 | 750 | 750 | 800 | 850 | 600 | 600 | 550 | 450 | 350 |
| Office Expense | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 250 |
| Point Of Sale | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 | 1,850 |
| Postage | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Pool & Spa Expense | 300 | 150 | 150 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Printing and Stationary | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 150 |
| Repairs & Maintance | 2,100 | 2,130 | 2,250 | 2,625 | 2,700 | 2,775 | 2,790 | 2,475 | 2,445 | 2,100 | 2,055 | 1,250 |
| Salaries  & Wages | 23,100 | 23,430 | 24,750 | 28,875 | 29,700 | 30,525 | 30,690 | 27,225 | 26,895 | 23,100 | 22,605 | 17,835 |
| Signs Contract | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 |
| Supplies Expenses | 1,400 | 1,420 | 1,500 | 1,750 | 1,800 | 1,850 | 1,860 | 1,650 | 1,630 | 1,400 | 1,370 | 850 |
| Payroll Taxes | 1,820 | 1,846 | 1,950 | 2,275 | 2,340 | 2,405 | 2,418 | 2,145 | 2,119 | 1,820 | 1,781 | 1,390 |
| Terminal Maintanence | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 |
| Telephone & TV -Cable | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| Uniform Expense | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Utilities Expense | 10,500 | 10,650 | 11,250 | 13,125 | 13,500 | 13,875 | 13,950 | 12,375 | 12,225 | 10,500 | 10,275 | 7,995 |
| U.S. Trustee Fees | | | | | | | | | | | | |
| Property Taxes | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Insurance Expense | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 |
| Sales Tax/City Tax | 21,000 | 21,300 | 22,500 | 26,250 | 27,000 | 27,750 | 27,900 | 24,750 | 24,450 | 21,000 | 20,550 | 18,450 |
| Hotel Motel Tax | 6,600 | 6,730 | 7,100 | 8,635 | 8,740 | 8,840 | 8,940 | 8,020 | 7,920 | 6,745 | 6,490 | 5,620 |
| | | | | | | | | | | | | |
| Total Expenses | 123,816 | 125,207 | 130,919 | 149,187 | 152,568 | 155,995 | 156,800 | 141,869 | 140,458 | 124,161 | 121,840 | 105,565 |
| | | | | | | | | | | | | |
| Net Operating Income | 46,784 | 48,823 | 53,681 | 65,699 | 69,172 | 72,516 | 72,040 | 61,902 | 59,912 | 48,197 | 46,915 | 46,505 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Class A Payment | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 | 30,216 |
| Class B Payment | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 | 5,701 |
| Class C/D Payment | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 | 3,541 |
| Net Income After Plan Payments | 10,867 | 12,906 | 17,764 | 29,782 | 33,255 | 36,599 | 36,123 | 25,985 | 23,995 | 12,280 | 10,998 | 10,588 |
| Projected Accrued Cash | 10,867 | 23,773 | 41,537 | 71,319 | 104,574 | 141,173 | 177,296 | 203,280 | 227,275 | 239,556 | 250,554 | 261,141 |